JAMES STINSON, Defendant in Error, *vs.* ROBERT A. SMITH, County Treasurer of Ramsey County, Plaintiff in Error.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

An act of the Legislature was passed March 7th, 1861, and on the same day presented to the Governor for approval The Legislature adjourned *sine die* on the 8th of March, and the act was approved and signed by the Governor on the 12th of the same month. One of the days intervening between the 8th and 12th was Sunday. *Held*, that the act was signed within the time prescribed by Sec. 11 of Art. 4 of the Constitution.

The act autho izing the laying out of Fort street road. in the county of Ramsey, provided that the damages and expenses of said improvement should be apportioned and assessed upon the real estate deemed benefitted by the Commissioners, in proportion to the benefits resulting thereto from the improvement. *Held*, that the act was in conflict with that portion of Sec 1. Art 9 of the Constitution, which prescribes that "all property on which taxes are to be levied, shall have a cash valuation."

Points and Authorities of Plaintiff in Error.

I.—The act under which the assessment was made was approved within the time prescribed in the Constitution.

Sunday does not form one of the days therein mentioned.

II.—The act secures compensation for lands taken by assessment on other lands. *See Constitution of the State of N. York, Art.* 1, *sec.* 6; 17 *Wend.*, 649; 2 *Denio*, 323; 3 *Paige*, 45; 7 *Barbour*, 416.

It has been held even that private property may be taken for public use without any provision for assessment, the implied good faith of the public to provide for payment in the future, being sufficient security. *See Bloodgood vs. The Mohawk & Hudson River R. R. Co.*, 14 *Wendell.* 51; 18, *Ib.*, 9.

III.—Sec. 1, of Art. 9 of the Constitution, has no reference to assessments for streets, roads, &c.

These are styled in the authorities assessments and not taxes.

The object of the above section was to prevent any one locality from being unduly taxed for the general benefit.

The heading of the act, " Finances of the State," &c., indicates the meaning of the section.

IV.—There was no irregularity in the proceedings of the Commissioners, or in the action of the Judge. The granting of a jury trial was in his discretion.

Besides, none of these questions can now be taken advantage of. By the terms of the act, the Judge was the arbiter thereof. If he did wrong, application should have been made to the Supreme Court for a mandamus. Complaint of these matters cannot be made collaterally.

V.—There should be judgment for the Plaintiff in Error. The matters ruled out by the Referee were inadmissible.


Points and Authorities of Defendant in Error.


I.—The act of 12th March, 1861, in question, is unconstitutional.

1.  All taxes must be as nearly equal as may be, and upon a cash valuation. *See Secs.* 1, 2, 3, *&c., Art. IX., State Constitution, Comp. Stats.*, 47.

Our constitution restrains the Legislature in this particular, and these special benefits assessed are governed by the taxing

power. *People vs. Mayor of Brooklyn*, 4 *Comst.*, 419; *McComb vs. Bell*, 2 *Minn.*, 307.

Assessing a portion of the inhabitants of a county or city for a public improvement upon the theory of special benefits, is an innovation, and only sustainable where the Legislature have unlimited discretion in apportioning as well as directing the tax.

In the present case, the Legislature are restricted, that is to say, taxes must be as nearly equal as may be, and *ad valorem*, or, in other words, there must be a rate of taxation assessed upon the value of the property. In neither of these particulars is the constitutional requirement answered in this instance.

2. The whole expense and damage is to be assessed upon the land benefitted, without regard to the extent of the benefits.

3. Compensation for the land taken is not first paid or secured within the meaning of the Constitution. *Sec. 13, Art. 1, Constitution, Comp. Stats.*, 46. The party whose land is taken, or who is entitled to damages, has no certain or adequate remedy to obtain payment for his land or damage. *Smith's Commentaries on Constitution and Statutory Construction*, 475; *Bloodgood vs. M. & H. R.R. Co.*, 18 *Wend.*, 17-18; *Smith's Coms.*, 476; *Thompson vs. Grand Gulf R.R. & Bkg. Co.* 3 *How. Miss. R.*, 240.

4. A jury trial is not secured to the parties interested, but only allowable in the discretion of the Judge, and, in this case, was refused to the Defendant in Error. *Sec. 8, Act of 12th March*, 1861; *Sec. 4, Art. 1, Constitution.*

5. The act was not approved by the Governor in season more than three days having elapsed from its passage. *Sec 11, Art. 4 Constitution*; *Comp. Stats.*, 49.

II.—The proceeding is fatally irregular, because the plat of the street does not designate the land injured or benefitted, as required by law. *Sec. 2, Act of May 23*, 1857; *Laws of 1857, page 299.*

This is obviously required, so that persons inspecting the plat may know whether or not they are parties in interest in the proceeding, that they may attend at the hearing, the no-

tice of hearing being general, and not directed to the property owners by name.

I. V. D. HEARD, Counsel for Plaintiff in Error.

HORN, LUND & GALUSHA, Counsel for Defendants in Error.

*By the Court.*—ATWATER, J.—This action was brought by Stinson, to enjoin the County Treasurer of Ramsey county from selling certain lots for assessments for benefits, under the act of the Legislature relative to the Fort street road, approved March 12, 1861. (*Sess. Laws of* 1861, *p.* 255.)

The cause was referred to James M. Gilman, Esq., who reported the facts, and his conclusions of law therefrom, that the Plaintiff was entitled to judgment for the relief demanded in the complaint, and judgment was entered in his favor accordingly. From this judgment Defendant sued out a writ of error.

Several grounds of error are here assigned against the judgment, only two of which we deem it necessary to notice.

It appears from the report of the referee, that the act of March 12, 1861, above referred to, was passed by the Legislature on the 7th day of March, 1861, and was, on the same day presented to the Governor for approval. The Legislature adjourned on the 8th of March, 1861, *sine die*. Said act was approved and signed by the Governor on the 12th of March, 1861. That one of the days intervening between said 8th and 12th of March, 1861, was Sunday. It is urged that this act is not valid, in that it was not approved until more than three days had elapsed fram its passage.

*Sec.* 11, *of Art.* 4 of the Constitution, provides, that " if any bill shall not be returned by the Governor within three days (Sundays excepted,) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the Legislature, by adjournment within that time, prevent its return, in which case it shall not be a law. The Governor may approve, sign and file in the office of the Secretary of State, within three days after the adjournment

of the Legislature, any act passed during the last three days of the session, and the same shall become a law."

Construing the last clause of the section above quoted, according to its strict letter, we should probably be required to hold the act in question void, as not having been signed and filed within the prescribed time. . We are satisfied, however, that the intent and spirit of the instrument require a different construction ; and that the purpose of the framers of the Constitution was to give the Governor three full working days, after the adjournment, for the consideration and filing of bills. Such time is expressly granted during the session of the Legislature ; and as the clauses occur in close connection, treating of the same subject matter, it does not seem unreasonable to hold that the exception of Sunday applies to the latter, although not repeated in terms. If it was thought proper to grant the Executive three full working days for the consideration of bills during the session of the Legislature, it is difficult to see why the same time should not be granted for the same purpose after the adjournment of that body. And indeed the reason is very much stronger for granting such time in the latter case, since it is notorious in the history of legislative bodies that a far greater number of important bills are usually passed during the last three days of the session, than within the same length of time, at any period previous during the session. We think, therefore, the referee committed no error in holding this objection not well taken.

The act relative to the Fort street road, in the county of Ramsey, was approved March 12, 1861. (*Sess. Laws* 1861, *p.* 255.) After providing for the assessment of damages of land taken by the Commissioners, the 7*th* *sub.* *of* *Sec.* 3 is as follows, viz.:

" Having ascertained the damages and expenses of said improvement as aforesaid, the Commissioners shall thereupon apportion and assess the same, together with the costs and expenses of the proceedings, prospective, as well as those already incurred, upon the real estate by them deemed benefited in proportion to the benefits resulting thereto from the improvement, as nearly as may be, and shall describe the real estate upon which said assessments are made."

Then follows the provision regarding the filing of the report of the commissioners with the Judge of the District Court of the Second Judicial District, and the proceedings to be had on the confirmation of the report by said Judge. Sec. 4 provides, that within one month after the receipt of said report by the treasurer, the parties owning lands assessed for benefits shall pay the amount thereof to such treasurer ; and if such payment is not made within said time, the said treasurer shall sell the lands upon which assessments shall remain unpaid, to the highest bidder at public auction, at his office in St. Paul, &c., to satisfy the assessment, penalty, and cost thereon.

In a case in some respects analogous to the present (*McComb vs. Bell*, 2 *Minn.*, 295,) we held that the assessment of the expense of grading a street in the city of St. Paul, is an exercise of the taxing power of the government, and not the right of eminent domain.  In determining, therefore, the validity of this assessment, and of the proposed sale of the premises in question under it, it becomes necessary to consider what limitations and restrictions, if any, have been imposed by the constitution upon the taxing power possessed by the Legislature, and whether, in this case, the power has been exercised in accordance therewith.

*Sec.* 1 *of Art* 9 of the constitution provides that "all taxes to be raised in this State shall be as nearly equal as may be, and all property on which taxes are to be levied, shall have a cash valuation, and be equalized and uniform throughout the State."

The following section declares that the Legislature shall provide for an annual tax sufficient to defray the estimated expenses of the State for each year ; and section three defines what property shall be subject to taxation, and what shall be exempt therefrom.  It is the first section above-quoted, which Defendant in Error claims has been disregarded in levying the assessment upon the property in question, as provided in the act of March 12, 1861.  While the Plaintiff in Error urges that the section has no reference to assessments for streets, roads, &c., but only to taxes for State purposes.  It is, therefore, necessary to determine the scope and object of this provision of the Constitution in the first instance.

The language of the first section is very comprehensive, embracing " all taxes to be raised in the State," and defining the general manner in which they are to be levied, to wit : they are to be as nearly equal as may be, and the property on which they are to be levied is to have a cash valuation. Whatever the purpose for which the tax is levied, be it state or municipal, the language is sufficiently broad to include it, and restrict the taxing power in the exercise of its authority, to the observance of the two requirements specified in the section. The latter clause of the section, providing that the valuation " shall be equalized and uniform throughout the State," would seem to have more direct reference to the tax levied for State purposes ; and we see no inconsistency in giving it such application, and at the same time holding that other than state taxes are referred to in the section. The object of the last clause is manifestly to prevent one locality from being taxed higher in proportion than another, in regard to expenses, of which all should bear an equal burden ; and this is not inconsistent with the general rule laid down for levying all taxes, to wit, that they should be equal, and the property on which they are levied should have a cash valuation.

Nor, looking beyond the letter, to what we may reasonably presume was the intent and object of the provision, can any valid reason be urged why the rule stated in the section is not as applicable to municipal as state taxes ? It is founded on the plainest principles of justice and equity, and its violation by the taxing power in levying taxes for municipal purposes would be none the less a wrong, though perhaps of less extent than in levying a tax for State purposes. And if it be conceded that the rule is just and proper in the abstract, and as applied to levying a tax for state purposes, we may, with still stronger reason, suppose it to have been the intent of the framers of the constitution, that it should also apply to the levying of all other taxes ; since municipal taxation, in its various forms, constitutes by far the heaviest burden to be borne by the citizen, and if the legislature has unlimited authority to impose these burdens, the evil sought to be restricted or

prevented would but very partially be reached by the provision in question.

There is another consideration which has a bearing upon the construction of this section. ' If the view of the counsel for Plaintiff in Error be correct, that assessments for streets and other municipal improvements are not within the purview of the article in question, but the same refers only to taxes for state purposes, it would seem that the property exempt by section 3 of the same article, as churches, cemeteries, &c., were liable to *assessments* for like improvements. If the legislature is only limited in the exercise of its authority to levy taxes or assessments, when it attempts te exercise such authority for state purposes, then it may tax or assess such exempt property for municipal purposes. It will hardly be argued that it could have been the intention to subject this species of property to burdens of this kind, whether under the name of taxes or assessments: As the levying of these assessments is an exercise of the power of taxation, it would fall within the prohibition of section 3 above cited; and for the same reason fall within the limitations of that power contatned in section 1 of the same article.

Regarding, therefore, this section 1 of article 9 as applicable to the assessment here imposed upon the property in question, it becomes further necessary to inquire whether the provisions of that section have been observed in levying the assessment. These provisions, so far as this assessment is concerned, may be considered under two heads, viz.: 1st, the taxes or assessments must be as nearly equal as may be; and, 2nd, the property on which the assessments are to be levied shall have a cash valuation.

In regard to the first point it may be remarked, that the intent of the framers of the constitution is not as clearly expressed as could be desired in ordaining the fundamental law. The justice of the general principle enunciated, that all taxes shall be as nearly equal as possible, will readily be conceded—the difficulty consists in determining to what persons or property this equality shall apply. It is not claimed that a municipal tax or assessment should be equalized upon the people or property of the whole State—manifestly such an appor-

tionment would be unjust, if not impracticable, and such construction cannot be given to the section. The Court of Appeals of the State of New York, in a well considered case, *The People vs. Mayor, &c. of Brooklyn*, 4 *Com.*, 420, held, that the power to tax, implies a power to *apportion* the tax as the legislature shall see fit ; and the power of apportionment has no limit where there is no constitutional restraint. That the power of taxing and the power of apportioning taxation are identical and inseparable. This doctrine we think well supported by reason and authority, and may be accepted as a correct proposition. The case above cited is analagous to the one at bar, the question raised being the validity of an assessment made to pay the expense of opening a street in Brooklyn, in which the expense was assessed upon the owners or occupants of lands benefitted by the improvement, in proportion to the amount of such benefit. The constitution of the State of New York contains no such provision as is contained in section 1 of article 9, above quoted, and it is urged that under our constitution the power of apportionment has been restricted, and that the tax or assessment must be coextensive with the district, or upon all the property in a district which has the character of, and is known to the law as a local sovereignty.

We are not satisfied from the language used in the constitution that it was the intent of the framers thereof, to limit the taxing power in imposing a tax or assessment, so as to deprive it of the power of determining what class of citizens, or what property shall bear the burthen. To give the clause this construction, it should be made to appear reasonably certain that a tax or assessment made to embrace all the property within the city, ward, county, or other political division, in which the improvement is situated, for which the tax is levied, would be more equal than if apportioned in any other manner ; or that no other reasonable construction can be given to the language used. If it be conceded that the legislature has the power of determining what particular property, or what class of persons shall bear this burthen, effect may be given to the provision, by holding the legislature restricted to making the tax equal, as near as may be, upon such property or

class. And in regard to the improvement in question, it may be remarked, that the act of March 12, 1861, does not designate the same as a county road, or show within what political divisions the road is situated. Inasmuch, however, as the determination of this point involves important interests, and the same has not been fully argued, and is not necessary in order to the proper disposition of the case, while declining to hold the act in question unconstitutional on the ground that the legislature had not the power to apportion the expense upon the property benefitted, we also decline to decide that the act is constitutional in regard to this point. The question is one of too much importance to be determined without thorough argument, and the fullest consideration, in which, if possible, the entire bench should participate.

In regard to another objection made to the validity of this assessment, we have no material difficulty in arriving at a satisfactory conclusion. The constitution declares that "all property on which taxes are to be levied shall have a cash valuation." This provision is clear and explicit and no reasonable doubt can be entertained, that the taxing power is restricted to an apportionment upon this basis. This provision seems to have been entirely ignored in levying this assessment. Having determined the property which should pay the expense of the proposed improvement, the legislature has adopted a rule in assessing that expense not recognized by the fundamental law, and in conflict with a provision thereof. The intent of the provision, doubtless, is to fix a rate of taxation, based upon a cash valuation of the property, and this, as the most likely mode to realize a just and equal assessment, even though the property is the same which is to bear the burthen. That important differences to individuals might result from apportioning a tax or assessment in this mode, rather than by an estimate of benefits to property, will scarcely be questioned. This is the method adopted in general taxation, for the obvious reason that it apportions the burthen according to the benefits more nearly than any other inflexible rule of general taxation, and also, perhaps, because the amount of each man's benefit in general taxation, cannot be ascertained and estimated with any degree of certainty. The

reason may not apply with the same force in regard to local taxation; but even in such case it may be urged with force that it would be much more difficult to make an equal and just assessment on the basis of benefits received, than by a rate based upon a cash valuation. But if this rule or mode be clearly prescribed in and by the constitution, it cannot be material to determine the reasons inducing thereto. The law making power must be governed by it, and taxes and assessments levied in accordance therewith. And whether or not it be suscepticbe of proof that any advantage would result from the method of assessment prescribed by the fundamental law, rather than that adopted by the legislature in the act in question, yet the individual whose property is liable to be seized under it, is entitled to insist that its requirements shall not conflict with the provisions of the constitution. And as this assessment was not made in accordance therewith, no right is shown to seize and dispose of the land of Defendant in Error, and the judgment below must be affirmed.

Note.—Ch. J. Emmett being interested in the result of this cause, took no part in the decision .