CITY OF ST. PAUL *vs.* ST. PAUL & SIOUX CITY RAILROAD COMPANY.

March 30, 1877.

**Assessments for Local Improvements—Exemption by Territorial Charter.**—Under the amended charter of the defendant corporation, (Sp. Laws, 1864, *c.* 1, p. 160,) in terms granting an exemption from all taxation and from all assessments in respect to its railroad and its appurtenances and appendages, and all other property, estate, and effects of said company, and also its capital and stock, and declaring that the payment by it of the *per centum* of gross earnings as therein provided, annually, "shall be and is in full of all taxation and assessment whatever," no special assessment for any local improvement can be imposed upon any portion of its railroad, or any of its real estate used in connection therewith.

**Same—Regrant of Exemption by State.**—It was competent for the legislature, in regranting, in 1864, the franchises pertaining to defendant's line of railroad, to alter the contract contained in the original charter of 1857, in respect to taxation, in the manner it did, notwithstanding §§ 1, 3, art. 9, of the constitution.

Certain lots of the defendant, in the city of St. Paul, were assessed by the proper municipal officers for benefits conferred on them by the grading of Second street from Wabasha to Jackson street, in that city, and, on non-payment by defendant, the city treasurer applied to the district court for Ramsey county for judgment against such lots for the amount of the assessment.   The defendant duly appeared and filed objections to the entry of judgment,

on the ground, among others, that, by the charter of the company, such lots were exempt from all taxation and assessments. It was thereupon stipulated between the city and the defendant that the latter is a corporation, duly created, organized, and existing under the act of March 2, 1855, entitled "An act to incorporate the Root River Valley & Southern Minnesota Railroad Company," (Laws 1855, c. 24,) and other acts mentioned in the following opinion; that defendant, for transportation of freight and passengers, has constructed, equipped, and put in operation, and now owns and operates, and for more than seven years last past has owned and operated, in this state, a continuous line of railroad more than sixty miles in length, etc.; that the lots assessed were long prior to and at the time of the assessment, and now are, owned by the defendant, and used and occupied by it in the actual operation of its road, and its tracks are laid and operated upon and across the same; that such lots form no part of its land grant, and that it has fully complied with the acts mentioned in the opinion, and has at all times paid into the treasury of the state all the percentage of its gross earnings required by such acts.

Upon this stipulation the defendant's objection was sustained by *Simons, J.*, and judgment of dismissal was entered, to review which the plaintiff sued out this writ of *certiorari.*

*H. J. Horn* and *W. P. Murray*, for plaintiff.

*Palmer & Bell*, for defendant

CORNELL, J.   In expounding any statute, the sole purpose is to ascertain its true meaning and the intention of the law-maker, so that the objects sought to be accomplished by it may be carried into effect, and not defeated. Hence, in the application of any general rule or canon of interpretation to a particular statute, regard should be had to the reason of the rule, considered in connection with the particular circumstances of that case. It is claimed by the plaintiff that the provision contained in section 9, of the act

of May 22, 1857, (Laws 1857, ex. sess., *c.* 1, *subc.* 3, § 9, p. 20,) exempting the land grant of the defendant corporation from all taxation, and requiring the annual payment of 3 per cent. of the gross earnings of its road, "in lieu of all taxes whatsoever" upon the property of said company, must be strictly construed as having reference solely to general or ordinary taxes, and not to special or local assessments, because of the general rule giving to the words "taxation" and "all taxes" that limited meaning.

When used in statutes granting immunity from taxation, such, undoubtedly, is the general rule to be observed in construing statutes strictly of that character, as is the case with statutes exempting burial-grounds, cemeteries, churches, public school-buildings, and the like, absolutely from all taxation. The reason of this rule grows out of the general policy of the law, by which all kinds of property are required to contribute proportionally to the support of government, whereby taxation becomes the rule, and exemption the exception. Whenever, therefore, an absolute exemption is claimed under a statute in favor of any one in respect to any kind of property, it is but reasonable to limit its scope and operation to the express words of the statute, or within some necessary implication from its terms. When, however, the statute relieves, as in this case, the corporate grantee of the exemption from no portion of its just and equal share of taxation in respect to any of its property, but merely provides a mode of commutation therefor, based upon a percentage of earnings or income agreed upon as a just equivalent, equally advantageous and beneficial to the state, this rigid rule of construction, applied to such a condition of things, must be so far modified as to harmonize with other well-settled rules of construction observed in determining the meaning of a contract of this character.

It is part of the legislative history of the state that its

policy in regard to the taxation of this and the other land-grant railroads, so called, was adopted with reference alike to facilitating the early construction of these lines of road, and to securing to the state, and every portion thereof, so far as possible, an ultimate and adequate return for the value of the franchises conferred, including this immunity from taxation. It is also a part of this well-known history that, in entering upon the execution of the trust created by the first congressional land-grant act, and in the disposition of the lands granted by that act among the four original land-grant companies, in 1857, the then territory (now state) adopted a distinct and special policy of taxation in reference to those companies and the lines of road which they were authorized to build, looking to the early completion of those lines, and the just rights and interests alike of the companies, the state at large, and all localities therein. This policy contemplated, as a basis of taxation, the annual gross income or earnings of the companies, instead of an *ad valorem* assessment or valuation of their franchises and property; and, instead of a general and local system of taxation, the payment of a fixed *per centum* of their annual earnings into the state treasury, for the benefit of the whole state, was provided for in lieu of all taxes whatsoever. This, it was supposed, would prove less vexatious and burdensome to the companies, especially in the infancy of their existence; ultimately more advantageous and productive to the revenues of the state, and clearly more just and equal to all localities therein, as all would share equally in the benefit to accrue from taxes raised and contributed on account of property held under franchises derived from the whole people. Experience is fast demonstrating the wisdom of this policy, and realizing the expectations of its founders.

The act of May 22, 1857, (Laws 1857, ex. sess., c. 1,) in disposing of the land grant, divided the several lines of railroad contemplated by the grant, and the lands apper-

taining thereto, among four different companies, one of which—the Minnesota & Pacific company—was created by the act, the others then being already in existence under previous charters.   It is conceded, as was held in *First Div. St. Paul & Pacific R. Co.* v. *City of St. Paul*, 21 Minn. 526, that the provision of that act applicable to the former company, as respects the subject of taxation, (§ 18, c. 1, of said act,) clearly exempts that company and its successors from all local assessments like the one in question ; yet it is claimed by the plaintiff that this rule does not apply to the other three companies, because of the difference in the phraseology of the section applicable to them, (§ 9, c. 3 of said act.)

The exemption clause in section 18 specifically exempts that company from " all assessments and taxes whatsoever," etc., whereas section 9 only provides for an exemption from " all taxation " of the lands granted to the other companies, and for the annual payment by them of the percentage therein specified, " in lieu of all taxes whatsoever upon the property of said companies respectively."   Apart from any other consideration, this difference in the phraseology of the two sections would seem to indicate an intention to establish one rule of exemption for the Minnesota & Pacific Railroad Company, and its lines of road, and another for the other companies and their lines.   It is undisputed, however, that the state was under the like obligation to encourage, and equally interested in promoting, the construction of each of these lines of road ; that the land grant and franchises conferred upon the former company were equally if not more valuable than those of either of the others, and that the exactions imposed upon each in respect to taxation were precisely alike.   In view of these facts it is difficult to perceive any good reason why the legislature would designedly make any distinction between companies representing these various interests, in respect to the amount of exemption it should grant to each in the way of

compensation for like exactions ; and a doubt very naturally arises whether the difference observed in the phraseology of these two sections was not the result rather of legislative inadvertence than intention. That such was the fact is made apparent by the subsequent legislation which occurred when, after having, through foreclosures and forfeitures, become repossessed of the franchises and properties belonging to these several companies, the state regranted them to new corporations. As to each such new corporation the same rule was adopted, in language incapable of misconstruction, thereby removing all doubt as to the intention of the legislature. By this new rule each company is required, for the first three years after the completion of thirty miles of its road, to pay annually 1 per cent. of its gross earnings ; for the next seven years, 2 per cent., and thereafter 3 per cent., in lieu of all taxation and assessment whatever. Sp. Laws 1865, c. 5, c. 6, c. 7, c. 10. This would seem to show that the word "taxes," as employed in the phrase, "in lieu of all taxes whatever," in section 9 of the act of 1857, was used in its broadest sense, as including both general and local taxation, analogous to the like use of the word in § 1, art. 9, of the constitution, as held by this court in *Stinson* v. *Smith*, 8 Minn. 366.

Be this as it may, however, there can be no doubt that the amendment of defendant's charter in 1864, (Sp. Laws 1864, c. 1, *subc.* 2, § 3, p. 160,) which in terms declares an exemption "from all taxation and from all assessments," and that the payment of the *per centum* annually, as therein provided, "shall be and is in full of all taxation and assessment whatsoever," protects the company against any assessments for local improvements, such as is sought to be imposed in this case. There is no force in the suggestion that the legislature had no constitutional power to enact this amendment, because of the limitations upon the taxing power imposed by §§ 1 and 3, of art. 9, of the constitution. The line of railroad in question, together with the lands,

property, immunities, and franchises pertaining thereto, is held under a grant made prior to the adoption of the constitution, and is hence unaffected by any of its provisions relating to the taxing power, and the mode in which it shall be exercised. This was fully settled by this court in the analogous case of *First Div. St. Paul & Pacific R. Co.* v. *Parcher*, 14 Minn. 297. Upon the renewal of the grant, in 1864, to the present company, it was therefore clearly competent for the legislature to change and modify its terms and conditions, so as to require the annual payment of a different rate per cent. of the gross earnings of the road, to commence upon the completion of thirty instead of fifty miles, and, in consideration of such annual payment, to exempt the railroad, its appurtenances, and other property, from all taxation, and from all assessments, both general and local. This modification of the original contract was prohibited by no provision of the constitution; and the enactment of March 4, 1864, in this regard, has not only been uniformly recognized and acted upon ever since, as valid, by both the executive and legislative departments of the state government, but, by an express constitutional amendment, adopted in 1871, it has been placed beyond the reach of any amendment or repeal, except by a law ratified by a vote of the electors of the state.

Judgment affirmed.