R. B. MINOR ET AL. v. C. C. McDONALD, SECRETARY OF STATE.

No. 2321. Decided November 1, 1911.

**1.—Computation of Time—Inclusion of Sundays.**

The rules for determining whether Sundays are to be included or excluded in computation of the time to which the performance of an act is restricted by statute, stated and discussed. (Pp. 466-468.)

**2.—Same—Statute—Veto.**

Under article 4, section 14, of the Constitution of Texas, Sundays are included in computing the twenty days after the adjournment of the Legislature within which the Governor is required to file a bill enacted by that body, with his objections thereto, with the Secretary of State, in order to prevent its becoming a law. (P. 468.)

**3.—Same—Revision of Statutes.**

Senate bill No. 11, providing for completing the revising, etc., of the Statutes of the State, passed by the Legislature and presented to the Governor for his approval on March 11, 1911, on which day the Legislature adjourned sine die, not having been filed by the Governor in the office of the Secretary of State, with his objections thereto until April 1st, more than twenty days, Sundays included, after adjournment, became a law without the approval of the Governor, and in spite of his attempted veto thereof. (Pp. 463-468.)

**4.—Mandamus.**

Mandamus to require the Secretary of State to include a certain Act (the validity of its adoption being controverted) in the official publication of the laws enacted at a session of the Legislature, can not be granted when the relators have delayed the proceeding therefor until the publication has been made. (P. 468.)

**5.—Same—Legislature—Bills Enacted—Custody.**

The Secretary of State will not be required by mandamus to surrender the custody of bills enacted by the Legislature and constituting archives of his office to Commissioners for revising the statutes, in order to enable them to perfect the work required of them by law in relation thereto. (Pp. 468, 469.)

Original action in the Supreme Court brought by R. B. Minor and others, commissioners, to revise the statutes, for writ of mandamus against McDonald as Secretary of State.

*Denman, Franklin & McGown,* for relator.—The twenty days allowed by the Constitution to the Governor after the adjournment of

the Legislature within which to veto a bill must be computed as running days and Sundays included in the computation. The bill in question was not vetoed within twenty running days after adjournment and the veto is a nullity and the bill is in effect as a law of the State. Constitution of 1876, art. 4, sec. 14; Constitution of the Republic of Texas, art. 1, sec. 26; Constitution of 1845, art. 5, sec. 17; Constitution of 1861, art. 5, sec. 17; Constitution of 1866, art. 5, sec. 17; Constitution of 1869, art. 5, sec. 25; Burr v. Lewis, 6 Texas, 76; Fire Insurance Co. v. Schrader, 89 Texas, 35; 36 Am. & Eng. Ency (O. S.), p. 10 and notes; State v. Michel, 78 Am. St., 364, and extensive note; Haley v. Young, 134 Mass., 366; Thayer v. Feldt, 4 Pick., 354; Hannum v. Tourtelott, 10 Allen, 499; Cunningham v. Mahan, 112 Mass., 56; Cooley v. Cook, 125 Mass., 408; Cauldfield v. Cook, 92 Mich., 626; Bank v. Milling Co., 110 Mich., 15; Adam v. Dohrman, 63 Calif., 417.

It appears from the plaintiffs' petition that the Attorney-General of the State is a member of the State Printing Board, and that he is construing the veto of the Act in question as legal and valid. A private citizen, therefore, has the right to apply for and obtain a mandamus requiring the Secretary of State to perform his ministerial duty with reference to the publication of the Act. The citizens of a State can not be denied the right to have determined the question of whether an Act duly enacted by the Legislature has been constitutionally vetoed by the Governor because of the inaction of the Attorney-General of the State. In the case at bar it appears upon the face of the petition that petitioners have a particular and special interest in the certification, publication and authentication of the said Senate bill, and that they are not mere interlopers, but are in good faith endeavoring to secure the performance by the Secretary of State of one of the duties of his office. Ayers v. State Auditor, 42 Mich., 428; Capito v. Topping (W. Va.), 28 L. R. A. (N. S.), 1089, and exhaustive note; Wise v. Biggar, 79 Va., 869; Wolfe v. McCaules, 76 Va., 876; State, etc., v. Barkler, 4 Kans., 379; State v. Mason, 43 La. Ann., 776; State v. Nichols, 42 La. Ann., 738, citing cases; Marbury v. Madison, 1 Cranch, 137; Kendall v. U. S., 12 Peters, 608; Board v. McComb, 92 U. S., 541.

*Williams & Stedman,* for respondent.—Sundays must be excluded in the computation of the twenty days after adjournment within which the Governor should veto the bill. Sec. 14, art. 4, Constitution; People v. Rose, 167 Ill., 147; Capito v. Topping, 65 W. Va., 587; Stinson v. Smith, 8 Minn., 366.

If the Governor's veto came too late and Senate bill No. 11 therefore became a law, still there is no duty devolving on defendant by virtue of his office as Secretary of State to deliver the manuscripts of the civil and criminal statutes enacted by the Legislature as the Revised Statutes of Texas to petitioners. Caven v. Coleman, 100 Texas, 467; DePoyster v. Baker, 89 Texas, 155; Glasscock v. Commissioner, 3 Texas, 51; Cyc., vol. 26, page 433; Yates v. People, 207 Ill., 327; Mobile & O. R. R. Co. v. People, 132 Ill., 559; State v. Anderson, 100 Wis., 533; State v. Buhler, 90 Mo., 560.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

The Thirty-First Legislature of the State of Texas enacted a law entitled: "An Act to provide for revising, digesting, annotating and publishing the civil and criminal laws of the State of Texas, and to require the commissioners appointed to revise the statutes; to prepare two bills, one providing a civil and one a criminal code of practice in the courts of this State, and report the same to the Governor, who shall submit the same to the Legislature." The bill was duly approved by the Governor on the 19th day of March, 1909, and took effect ninety days after adjournment of the Legislature, which occurred on the 30th day of March, 1909. The purpose of the said Act is expressed in its first section thus:

"Section 1. The Governor shall, by and with the advice and consent of the Senate, if in session, appoint three commissioners, who shall be learned in the law, whose duty it shall be to make a complete revision and digest of the laws, civil and criminal, of the State of Texas, and annotate the same in accordance with the provisions of this Act. Said commissioners shall adopt such of the Revised Statutes, Civil and Criminal, as have not been repealed or amended, together with an appropriate arrangement of titles, articles, marginal references and chapter headlines, and shall not change the words or punctuations thereof except in cases of evident clerical or typographical errors; or to improve the verbiage or make clear the meaning of the text, provided the present numbering or arrangement of the articles is not required to be preserved."

The Governor of Texas appointed the relators commissioners in accordance with the said Act, who proceeded to perform the duties imposed upon them by section 3 of said Act, which reads:

"Sec. 3. Said commissioners shall embody the result of their labors in two bills, one containing the entire body of the Civil Statutes and State Constitution as adopted and amended and annotated and digested, and the other, the entire body of the statutes relating to criminal law, both properly indexed, annotated and digested, which bills said commissioners shall report to the Governor before the meeting of the Thirty-Second Legislature; and it shall be the duty of the Governor upon the receipt of said bills and reports, to cause three hundred copies of the same to be printed at the expense of the State, in the same manner and under the same rules and regulations as are prescribed by law for other public printing which said copies shall be delivered to the Secretary of State for the use of said Legislature."

The commissioners did not complete the work of annotating and indexing the said statutes. The details of said Act need not be given here, but we will refer to such portions as are important in this litigation.

The commissioners in the performance of their duties embodied "the results of their labors in two bills" and reported the same to the Governor before the meeting of the Thirty-Second Legislature. The Thirty-Second Legislature enacted the said bills into laws which became and are digests of the laws of the State.

The same Legislature enacted the following bill into a law: "S.

B. No. 11. An Act to provide for completing the work of revising, digesting, annotating, indexing, printing and publishing the civil and criminal laws of the State of Texas, making an appropriation, and providing for fixing the price at which said statutes shall be sold and for the sale thereof, and declaring an emergency."

Sections 1 and 2 of the above named Act reads as follows:

"Section 1. That the commissioners appointed by the Governor under an Act of the Thirty-First Legislature, entitled: 'An Act to provide for revising, digesting, annotating and publishing the civil and criminal laws of the State of Texas, and to require the commissioners appointed to revise the statutes; to prepare two bills, one providing a civil and one a criminal code of practice in the courts of this State, and report the same to the Governor, who shall submit the same to the Legislature,' approved March 19, 1909, having filed their report showing that a part of their work is not completed, the said commissioners are hereby authorized and directed to proceed without delay to complete the work of revising, digesting, annotating and indexing the laws, civil and criminal, of the State of Texas, of a general and permanent character, including all such laws enacted up to the time of the completion of the work of said commissioners; and to that end the said commissioners are hereby authorized to employ such assistants in the revising, digesting, annotating and indexing of said statutes as they may deem necessary."

"Section 2. That said laws, civil and criminal, when so revised and digested, and when adopted by the Legislature, with such amendments thereto as may be made by it, including all laws that may have been enacted subsequent to the general adoption of the codification, and the Constitution of the State, with full, accurate and separate annotations of said statutes, civil and criminal, and of the said State Constitution and with the addition of the Constitution of the United States, shall be printed and published in a work to be entitled the 'Revised Statutes of Texas, 1911,' in such number of volumes as may be found necessary, with a full, accurate and separate index to each of the codes (civil and criminal) and Constitutions; and, provided, further, that the report of the codification commission, together with the reports of the joint sub-committee appointed by the House and Senate upon the subject of the codification of the Statutes shall be printed and published upon the fly-leaf of said volume or volumes so to be published. The title page of each volume shall recite and show that it is published by authority of the State of Texas, and each volume shall be authenticated by the certificate of the Secretary of State annexed thereto, as other laws, when published, are required to be certified."

Senate bill No. 11 was presented to the Governor on the 11th day of March, 1911, and the Legislature adjourned on that day *sine die*. On the first day of April, thereafter, the Governor filed with the Secretary of State his objection to the said bill. We copy from the Governor's veto as follows:

"To the Secretary of State: As provided for and required by section 14, article 4, of the Constitution of Texas, I am transmitting to you herewith for file in the office of the Secretary of State Senate

bill No. 11, the same being 'An Act to provide for completing the work of revising, digesting, annotating, indexing, printing and publishing the civil and criminal laws of the State of Texas, making an appropriation, and providing for fixing the price at which said statutes shall be sold and for the sale thereof, and declaring an emergency.' "

"The codifiers did not complete the index to the Civil Statute. Senate bill No. 11, which I am now filing with the Secretary of State without approval, provides for the continuation of the Codifying Committee for the purpose of completing the work of revising, digesting, annotating, indexing and printing the civil and criminal laws of the State, and provides that they shall receive an annual salary until work is completed equal to the salary paid to the judges of the Courts of Civil Appeals, and appropriates $25,000 to meet this expense. I quote at this point section 3 of Senate bill No. 11:"

"Section 3. The printing of said 'Revised Statutes' shall be done at the expense of the State, in the same manner and under the same rules and regulations as are prescribed by law for other public printing, and shall be paid for as other public printing, and not out of the special appropriation made by this Act."

"The above shows that no part of the appropriation of $25,000 can be used to pay for the printing of the codified statutes as adopted by the Legislature. In my opinion the codified statutes as passed by the Legislature can be indexed and seven or eight thousand copies printed for the amount appropriated in Senate bill No. 11 for the continuation of the work set forth in the caption of the bill. It is believed, also, that two years time might be required under the terms of Senate bill No. 11 to complete the work of revising, digesting, annotating and indexing of the civil and criminal laws embraced in the codification Acts, or more properly speaking, in Senate bills 287 and 288."

This action was instituted to secure a writ of mandamus to command the Secretary of State to make a certified copy of the last named bill and to cause it to be printed in the pamphlet laws of the State enacted by the same session of the Legislature, notwithstanding said veto.

The only question for our decision is, should the Sundays which occurred between the 11th day of March and the first day of April, 1911, be excluded in the twenty days allowed to the Governor to file his veto, after the adjournment of the Legislature? If we exclude the Sundays the veto was filed in time. If the Sundays be included in the twenty days, the veto was filed too late and the bill became a law.

Section 14 of article 4 of our Constitution contains this language: "If any bill shall not be returned by the Governor with his objections within ten days (Sundays excepted), after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the Legislature, by its adjournment, prevent its return; in which case it shall be a law, unless he shall file the same, with his objections, in the office of the Secretary of State, and give notice

thereof by public proclamation within twenty days after such adjournment."

The general rule for excluding or including Sundays under such facts as are presented here is thus stated in Hanover F. Ins. Co. v. Shrader & Rogers, 89 Texas, 40, 30 L. R. A., 498, 59 Am. St., 25:

"Where the time allowed for doing an act is very short it is usual to exclude a Sunday. The principle would seem to be that, when but a few days are allowed in which to do the act, it is not to be presumed the Legislature intended further to abbreviate it, in effect, by including a day ordinarily observed as a day of cessation from all ordinary business. For example, where two days are designated it is not reasonable to hold that it was the purpose to include a Sunday, when the practical effect of the ruling would be to reduce the time to one day only. But where weeks are included in the time allowed the reason does not apply."

The rule is more concisely stated thus, if the period of time within which an act is to be done does not necessarily embrace a Sunday, then a Sunday which may occur in the time will be excluded. If the period of time be such that one or more Sundays must occur, Sundays must be included. 28 Am. & Eng. Ency. Law, 223, note 1.

In support of their contention that the Sundays should be excluded counsel for respondents cite these cases: Stinson v. Smith, 8 Minn., 366; Capito v. Toping, 65 W. Va., 587, 22 L. R. A. (N. S.), 1089; People v. Rose, 167 Ill., 149.

In the case of Stinson v. Smith, supra, the time within which the Governor must return a bill to the Legislature, when in session, was three days (Sundays excepted), and for filing his veto after the Legislature adjourned the time was three days, the words excepting Sundays being omitted.

In Capito v. Toping, supra, the court construed the Constitution of West Virginia, which fixed five days (Sundays excepted) as the time within which the Governor was required to return a bill to the Legislature while in session with his veto, and gave the same number of days after adjournment of the Legislature within which the Governor might file his veto, but did not except Sunday. In each of those cases the court held that the words "Sundays excepted" should be implied in the clause which related to the action of the Governor after adjournment of the Legislature, because they were in the same sentence and it would be presumed that the Legislature intended to allow as many working days for doing the same thing before and after adjournment. It was suggested in support of that construction that there would probably be many bills which would reach the Governor after adjournment, hence as many days would be required after adjournment as before. We call attention to the fact that in each of those cases Sunday would have been excluded under the general rule, because neither three nor five days could embrace more than one Sunday.

People v. Rose, supra, construed a clause of the Constitution of the State of Illinois, which was the same as in Minnesota and West Virginia, except that the time was ten days.

In Stinson v. Smith, supra, the court of Minnesota stated forcibly

the reasons upon which this doctrine rests thus: "Construing the last clause of the section above quoted, according to its strict letter, we should probably be required to hold the Act in question void, as not having been signed and filed within the prescribed time. We are satisfied, however, that the intent and spirit of the instrument require a different construction; and that the purpose of the framers of the Constitution was to give the Governor three full working days, after the adjournment, for the consideration and filing of bills. Such time is expressly granted during the session of the Legislature; and as the clauses occur in close connection, treating of the same subject matter, it does not seem unreasonable to hold that the exception of Sunday applies to the latter, although not repeated in terms. If it was thought proper to grant the Executive three full working days for the consideration of bills during the session of the Legislature, it is difficult to see why the same time should not be granted for the same purpose after the adjournment of that body. And, indeed, the reason is very much stronger for granting such time in the latter case, since it is notorious in the history of legislative bodies that a far greater number of important bills are usually passed during the last three days of the session, than within the same length of time, at any period previous during the session."

Conceding the correctness of those decisions and the forceful reasons assigned, they are not authority in this case, because the provisions of our Constitution are substantially different.

In the case of State v. Norton, 131 N. W., 257, the Supreme Court of North Dakota construed this provision of the Constitution of that State: "If any bill shall not be returned by the Governor within three days (Sundays excepted) after it shall have been presented to him, the same shall be a law unless the legislative assembly, by its adjournment, prevent its return, in which case it shall be a law unless he shall file the same with his objections, in the office of the Secretary of State, within fifteen days after such adjournment."

It was contended in that case, as in this, that Sundays should be excluded from the number of days allowed for the Governor to file his veto of a bill after the Legislature had adjourned. In discussing that question the court said: "But a careful examination of the above authorities serves to convince us that they are not in point in the case at bar. It will be noticed that in each of those cases the Governor was allowed the same period of time after the adjournment of the Legislature that was allowed him before such adjournment in which to act on bills, and this was a controlling fact in the decisions of those cases. The reasoning in the opinions in the above cases does not apply in construing the language of our Constitution above quoted. The fact that the framers of our Constitution deemed it wise to exclude intervening Sundays in fixing the three-day period in no manner tends to show that in fixing the fifteen-day period they deemed it wise or necessary to also exclude intervening Sundays. They were dealing with two distinct periods of time, having no similarity, and if they intended to exclude intervening Sundays as to the larger period of time fixed by them it is reasonable to assume that they would have expressly so provided."

The reasoning in that case applies to this case with equal force. The number of days in which the Governor is required to act is not the same as expressed in our Constitution, before and after adjournment, therefore the presumption does not arise that it was intended that the phrase (Sundays excepted) should qualify both periods of time. Indeed, the greater number of days allowed for action after adjournment indicates that the framers of the Constitution of this State intended to make a provision in lieu of that exception by increasing the time for filing a veto after adjournment. It is apparent that the convention had in mind the fact that a greater number of bills might be in the hands of the Governor at the time of adjournment and provided for that by giving more time for performing the labor of examining the bills, allowing seventeen working days instead of ten, for there could not occur more than three Sundays in the twenty days.

We conclude that the veto was filed with the Secretary of State one day too late, and that Senate bill No. 11 became and is a valid law of the State.

The prayer of the petition is as follows:

"Premises considered, your petitioners pray that they be permitted to file this their application for writ of mandamus, they having no other or sufficient remedy under the premises averred, and that process be duly ordered and issued to the defendant Secretary of State to show cause within some short date to be named by the court or one of the judges thereof, why writ of mandamus should not be issued to him, directing and requiring him to:

"(a) deliver to your petitioners as such commissioners the said manuscripts of the said Civil Statutes and the said Criminal Statutes as prepared by your commissioners submitted to the Legislature by them and enacted into law by said Legislature and now in the possession of the said defendant Secretary of State.

"(b) make a certified copy of the said Senate bill No. 11 as finally passed by the Legislature, duly certify thereto and deliver same to the contractor employed by the Board of Public Printing for the printing of the said laws of the Thirty-Second Legislature passed at its first regular session and to cause same to be printed by said contractor and to compare same with the original Act and thereafter to authenticate the same as a part of the session Acts duly passed by the said Thirty-Second Legislature at its first regular session and thereafter to distribute copies of same as printed and authenticated to the heads of the departments of the State of Texas as a part of the laws duly passed by the said Thirty-Second Legislature at its said regular session."

The relators have delayed this proceeding until the laws of the Thirty-Second Legislature have been published in pamphlet form, therefore that portion of the prayer which seeks to have Senate bill No. 11 printed with the laws of that session can not be granted. The bill became a law and the mandamus will issue to the Secretary of State to file it among the archives of his office as a law of the State.

The two bills which were enacted by the Thirty-Second Legislature constituting the "Revised Civil Statutes" and "Revised Criminal

Statutes" are part of the archives of the Secretary of State and an appropriation has been made to have them printed and indexed. There is no law that requires or authorizes the Secretary of State to surrender control of the manuscripts to relators. If the pencil memoranda made on the manuscripts shall be important to relators in perfecting their work, we doubt not they can have access to them on application to the Secretary of State. The writ will be refused in so far as it seeks to have the manuscripts delivered to relators.

It has not been shown that the respondent was wilfully at fault in any respect, and relators will pay the cost of this proceeding.