COUNTY OF TODD *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

| 38 | 163 |
|----|-----|
| 39 | 26 |
| 39 | 113 |
| 38 | 163 |
| 42 | 240 |
| 38 | 163 |
| 45 | 511 |
| 45 | 514 |
| 38 | 163 |
| 51 | 442 |
| 38 | 163 |
| 56 | 161 |
| 38 | 163 |
| 68 | 246 |

February 1, 1888.

Taxation of Railway Property — Timber Lands not Exempt.—The charter of a railroad corporation provided for the payment to the state of a stated percentage of its gross earnings, in lieu of all taxes and assessments, and that, in consideration of such payment, the company should be forever exempt from all assessments and taxes whatever upon its stock, franchises, or estate, real, personal, or mixed. *Held*, that such exemption was not applicable to large tracts of timber land purchased by the corporation, from which to take timber to be converted into ties and lumber for the use of the corporation.

In proceedings in the district court for Todd county, to enforce payment of taxes on real estate, the St. Paul, Minneapolis & Manitoba Railway Company interposed an answer as to certain lands owned by it and appearing upon the delinquent-tax list, claiming that the same are exempt from the taxes sought to be enforced. The issues raised by the answer were tried before *Collins* and *Baxter*, JJ., who found the facts recited in the opinion, and directed judgment for the collection of the taxes. Upon the defendant's application the cause was certified to this court.

*W. E. Smith, M. D. Grover* and *S. L. Campbell*, for defendant.

*Moses E. Clapp*, Attorney General, and *E. B. Wood*, for plaintiff.

DICKINSON, J.[1] This railway corporation in 1882 purchased 35,000 acres of land in Todd county, which, excepting an inconsiderable portion, was timbered land. The question to be determined is as to whether these lands are exempt from ordinary taxation. The lands were purchased on account of their being valuable timber lands. Since 1885 the corporation has been engaged in cutting the timber, and converting it into boards, plank, ties, and lumber of all kinds. The greater part of this has been used in constructing and repairing the railroad of this corporation in this state; the remainder (about

---

[1] Collins, J., having tried the case in the court below, took no part in this decision.

one-third) has been used for a like purpose upon that part of the road which is in the territory of Dakota. In some places, where the timber has been cut, grass has grown up, a small quantity of which has been sold. Upon a part of one tract a town-site had been platted before this land was purchased by the corporation, and a part of the lots are now owned by it.

This corporation became the owner of a part of the line of the Minnesota & Pacific Railroad Company, and as to its line of road succeeded to the rights, franchises, and immunities of that company, including its exemption from ordinary taxation. As to this no question is raised; nor that the charter of the Minnesota & Pacific Company is to be referred to as defining the exemption to which the St. Paul, Minneapolis & Manitoba Company is entitled. By section 1 of this charter (Laws 1857, Ex. Sess. c. 1,) corporate powers were granted, including the right to acquire, by purchase or otherwise, and to hold, convey, sell, and lease, property and estates either real or personal or mixed. Section 2 empowered the corporation to locate, construct, and operate a railroad. Section 3 authorized the appropriation, by virtue of the right of eminent domain, of a belt of land, not exceeding 200 feet in width, throughout the entire length of the road, and to take property even beyond that limit for certain necessary purposes. Section 16 regranted to the corporation the lands granted to the territory by act of congress. Section 18 provided for the annual payment to the state of 3 per cent. of the gross earnings of the railroad, "in lieu of all taxes and assessments whatever," and that, "in consideration of such annual payments, the said company shall be forever exempt from all assessments and taxes whatever * * * upon all stock in the said Minnesota & Pacific Railroad Company, whether belonging to said company or to individuals, and upon all its franchises or estate, real, personal, or mixed, held by said company; and said land granted by said act of congress * * * shall be exempt from all taxation till sold and conveyed by said company." Section 20 declared that the company should be "capable, in law, of taking and holding any lands granted by the government of the United States, or of this territory, or of the future state, or by other parties, which shall be conveyed to it by this act, or by deed, gift, or pur-

chase, or by operation of law, and may mortgage, pledge, sell, and convey the same. * * *"

It is a familiar rule, declared and applied in almost all of the cases involving questions like that under consideration, that "statutes imposing restrictions upon the taxing power of a state, except so far as they tend to secure uniformity and equality of assessment, are to be strictly construed." This is the language of the supreme court of the United States in *Bank* v. *Tennessee*, 104 U. S. 493, hereafter referred to. In *County of Ramsey* v. *Chicago, Mil. & St. Paul Ry. Co.*, 33 Minn. 537, (24 N. W. Rep. 313,) we had occasion to construe a similar statute. A statutory exemption of "the railroad, its appurtenances and appendages, and all other property, estate, and effects of said corporation, held or used for, in, or about the construction, equipment, renewal, repair, maintaining, or operating its railroad, including the lands granted to said company to aid in the construction of said railroad, as also the stock and capital of said company," was considered applicable only to such lands (apart from the land grant) as were held and appropriated to the proper purposes of the corporation in its business of constructing and operating a railroad. It has been considered that the purpose of such statutes has been, not to exempt property from taxation, but to provide a substituted method of securing to the state its proper revenue from the taxable property of these corporations. *City of St. Paul* v. *St. Paul & Sioux City R. Co.*, 23 Minn. 469; *County of Hennepin* v. *St. Paul, M. & M. Ry. Co.*, 33 Minn. 534, 535, (24 N. W. Rep. 196;) *County of Ramsey* v. *Chicago, Mil. & St. Paul Ry. Co.*, *supra*. And the exemption of taxable property from direct taxation is based upon the assumption that such property will be held and used for the purposes for which the corporation was created, and through such use yield to the corporation an income, and to the state a percentage of the same in lieu of direct taxation. We think that the decision in the case last cited, and the reasoning upon which it is based, are applicable here to exclude the land in question from the operation of the exemption clause above recited. The language of the statute, it is true, is sufficiently comprehensive to include all property, for whatever purpose it may have been acquired and held; but that is to be read and con-

strued in view of the purposes for which the corporation was created. This was the construction and operating of a railroad, and the whole act relates to this purpose. As to the land grant which was conferred upon the corporation to aid in the construction of the road, its privileges were peculiar. It was not expected that the great body of such lands would be occupied or used directly for railroad construction or railroad business, and the purposes for which the grant was made contemplated that the same might be held and disposed of for speculation and gain; and, as to such land, the exemption was specially and particularly declared. But, apart from the special purposes for which this grant of lands was made, and the special provisions relating to it, there is nothing in the charter extending the general scope of the powers of this company beyond the bounds which ordinarily limit the powers and privileges of railroad corporations. Although it might be for the profit and benefit of the company to purchase land merely for speculation, or to engage in manufacturing for profit, or in banking, it was not empowered to engage in such enterprises; and if it were to acquire and use land for such purposes, such property would not be employed in the manner contemplated by the statute in question, and would not come within the exemption there declared.

No very precise rule can be laid down by which it can be determined, in all cases, whether land acquired for railroad purposes is or is not within such an exemption. The mere fact that it was acquired and used for purposes connected with the road would not necessarily determine its exemption. Many branches of industry might be made serviceable in connection with the operations of a railroad, and property be devoted 'to various uses, which could hardly be supposed to have been contemplated, when the corporation was created, as being within the scope of its powers. Such might be the case with respect to the purchase and working of iron mines, forges, and rolling-mills; the erecting of residences for the use of its officers and employes, under ordinary circumstances; the building up of towns along the route to affect the location of centres of population and business, and thus to promote the business and the interests of the company. Even though the state were not to interfere with a corporation engaged in

such enterprises, the property thus invested and used would not be within the purposes or the scope of this statutory exemption. Neither, on the other hand, should the operations of the corporation be limited to those things which, in the strictest sense of the word, are *necessary* for the bare construction and operation of a railroad. In the absence of peculiar language controlling the effect of a charter, such a corporation is impliedly authorized to prosecute its business in the usual and ordinary way in which such common enterprises are carried on. They may do that which is reasonably necessary for the accomplishment of the authorized undertaking; but it is not contemplated that extraordinary and unusual powers shall be exercised.

The purchase of the lands in question could not, we think, be deemed, in any proper sense of the word, necessary for the prosecution of this enterprise, nor was it such an ordinary appropriation of property to the purposes of the railroad as to come within the reason and scope of the exemption. Such a purchase and use is no more within the contemplated means of accomplishing the purposes of the incorporation, and no more properly incident thereto, than would be the purchase of an iron mine, and the erection and operation of works for converting the ore into iron rails and machinery. If there is any limit to the exemption,—and as to this there can be no question, under the authorities, — this property was unquestionably, in our opinion, beyond the scope of the exemption. It may be stated, as a general proposition, that such real estate of a corporation as is not *itself* devoted to use for railroad purposes is not within such exemption, even though the *product* of the land be so used. Whether any real property which the corporation could not acquire by condemnation under the law of eminent domain (and it could not have so acquired this land) would be exempt from ordinary taxation, we need not decide.

In addition to authorities cited in *County of Ramsey* v. *Chicago, Mil. & St. Paul Ry. Co., supra,* we refer to some others going to sustain the view we have taken of this case. In *Matter of Swigert,* 119 Ill. 83, (6 N. E. Rep. 469,) the supreme court of that state lately considered the question of the taxability, for other than state purposes, of a grain elevator built upon the lands of a railroad corporation, and

owned by it, but leased to other parties.  The elevator facilitated the operations of the railroad in the shipment of grain.  The charter of the company exempted from taxation certain granted lands, and also, for a period of six years, the "stock, property, and effects of the company;" and thereafter "the stock, property, and assets" belonging to the company were to be taxed, to a limited extent, for state purposes. The corporation was "exempted from all taxation of every kind except as herein provided for."  It was considered that although the language of the statute was sufficient to include the property in question within the exemption, yet that it was not the purpose of the legislature to exempt such property so held, it being not necessary for the construction and operation of the road.  See, also, *Illinois Central R. Co.* v. *Irvin*, 72 Ill. 452.  In *Bank* v. *Tennessee*, 104 U. S. 493, a banking corporation was empowered to "purchase and hold a lot of ground for the use of the institution as a place of business, and at pleasure sell and exchange the same, and may hold such real or personal property and estate as may be conveyed to it to secure debts due the institution, and may sell and convey the same."  The charter further declared that the institution should "pay to the state an annual tax of one-half of one per cent. on each share of capital stock, which shall be in lieu of all other taxes."  The bank purchased, with a portion of its capital stock, a lot with a building upon it, a part of which building the bank occupied, and it leased the remainder.  As security for certain loans from the bank a trust deed of certain other lands had been made in its favor.  To enforce the security these lands had been sold under the deed, the bank purchasing, and afterwards holding the same for sale.  It was held that these lands, and that part of the bank building not occupied by it, were not exempt from taxation. The court declares the rule of strict construction, to which we have before referred, and says: "It is to be presumed that the exemption from other than the designated tax was in consideration that the capital would be employed for its legitimate purposes.  *  *  *  In our judgment the limited exemption cannot be extended to property used beyond the actual wants of the corporation in carrying out the purposes of its creation."  The court cite with approval, among other cases, *State* v. *Commissioners of Mansfield*, 23 N. J. Law, 510, in

which, under a charter authorizing, generally, a railroad company to purchase and hold real estate, it was held that lands acquired by the company, and occupied by dwelling-houses which it let to its employes, was not exempt. In the later case of *State* v. *Hancock*, 35 N. J. Law, 537, the sharp contrast which is made prominent in the opinion in *State* v. *Mansfield*, as a test of taxability between what is strictly necessary and what is convenient for the purposes of the corporation, is disapproved; but the decision in the latter case is not opposed to our view of the law. See, further, *Vermont Central R. Co.* v. *Burlington*, 28 Vt. 193; *Inhabitants of Worcester* v. *Western R. Co.*, 4 Met. 564; *Mil. & St. Paul Ry. Co.* v. *City of Milwaukee*, 34 Wis. 271.

Order affirmed.

This case having been remitted to the district court, judgment was entered, from which the company appealed. On June 29, 1888, an order of affirmance was made, and on July 26th judgment of affirmance was entered in this court. On July 27th a writ of error to the supreme court of the United States was allowed by Gilfillan, C. J.