STATE OF MINNESOTA *vs*. NORTHERN PACIFIC RAILROAD COMPANY.

June 22, 1888.

Taxes—Logs cut on Exempt Land.—Logs cut for the purpose of sale by the Northern Pacific Railroad Company upon its lands, exempt from taxation by virtue of the provisions of Sp. Laws 1865, *c*. 8, § 1, and Sp. Laws 1870, *c*. 65, § 1, are subject to taxation.

Appeal by defendant from an order of the district court for Aitkin county, *Sleeper*, J., presiding, overruling a demurrer to its answer in a proceeding to collect personal property taxes.

*Jno. C. Bullitt, Jr.*, for appellant.

*A. Y. Merrill*, for the State.

COLLINS, J. The court below sustained a general demurrer to defendant's answer, (directing judgment in plaintiff's favor,) which demurrer was argued in connection with a stipulation as to the facts. The only question to be considered is the taxability of a quantity of pine logs cut upon lands belonging to defendant,—a railway corporation,—which lands are confessedly exempt from taxation by virtue of Sp. Laws 1865, *c*. 8, § 1, and Sp. Laws 1870, *c*. 65, § 1, and were acquired by the act of congress of July 2, 1864, (13 U. S. St. at Large, 365,) in which every odd-numbered section of land, not mineral, and lying within 10 miles of its proposed line of railway, was by the general government granted the appellant to aid in the construction and operation of its road. In the winter of 1886 appellant entered upon

a portion of its lands so granted, cut down trees thereon standing, converted them into logs for the purpose of sale, and actually did sell the same after May 1st following. After the severance, and before the sale, the proper officials levied the tax which appellant now refuses to pay, upon the sole ground that the logs are exempt from taxation.

By means of the acts of the legislatures of 1865 and 1870, above cited, the appellant, in lieu of other taxation upon its "lands, franchises, property, stock, and capital," is permitted to pay into the state treasury a per centum of its gross earnings. And while the language used in the acts mentioned is broad and comprehensive, it is well settled in this state that it embraces but two classes of real property,—the first, the lands granted defendant by the general government; the second, such real property as may be used in the operation of its railway. *County of Ramsey* v. *Chicago, Mil. & St. Paul Ry. Co.*, 33 Minn. 537, (24 N. W. Rep. 313;) *County of Todd* v. *St. Paul, M. & M. Ry. Co.*, 38 Minn. 163, (36 N. W. Rep. 109.) It may also be safely asserted that only such personalty is exempt as is held and used in the proper purposes of the corporation, in the carrying on of the business for which it was given life, and for repairs and further construction.

These propositions are not seriously controverted by the appellant, and are decisive of its case, because, when severed from the soil, these logs were no longer a part of the exempt land grant, became personal property at once, and as such (having been cut for sale, and not for use upon the railway) subject to the revenue laws of the state, precisely as property of the same character owned by a private individual or some other corporation. Its line of argument is that, when exempting the lands, the legislature had in view the fact that they were chiefly valuable for the growing timber thereon, and that those who held them designed the most advantageous disposition possible; that, as it was entitled to realize in any manner, it could sell the land outright, or could sell the timber, retaining the land, or could itself cut off and market the pine.

Unquestionably the appellant could have pursued any method of disposal which would not change the character of that which was real

estate, and as such exempt from taxation.    But we doubt if there is any force in appellant's suggestion (the base of his argument) that the legislature had in mind or expected that a corporation formed to construct a railway across a continent would ever engage in an enterprise so foreign to its purpose as is lumbering, by putting its own men and teams into the woods, or by contracting with those who make it a business to cut for others.    The rule is well settled that "statutes imposing restrictions upon the taxing power of the state, except so far as they tend to secure uniformity and equality of assessment, are to be construed strictly;" and if we depart from the proposition that, whenever the form of exempt property changes (as it has in this case from real to personal) from that clearly within the exemption, it ceases to be favored, there is no safe place to halt, and no defined limit in the degree of departure.    This is apparent from the facts here.    The appellant has by its skilful labor, by cutting and marketing its timber, greatly decreased the value of its land, and doubled or trebled the value of the pine which grew thereon.    If it can double or treble this value by adding labor to it, and still claim the benefit of the exempting statute, it can as safely increase the value one hundred fold.    If it can make its standing timber into saw-logs without incurring the burden of taxation, and upon a plea that such a disposition is justified and was contemplated because advantageous, it can with equal propriety convert the logs into boards, and thence through all the grades of manufacturing to the finished article of merchandise.    The argument advanced that cutting into logs promotes the interests of the appellant by enabling it to realize more for its lands, and therefore must have been meditated by the legislature, is as pertinent when the logs are cut into boards, and when the boards are made into boxes, as at any prior point in the attempt to convert the natural product of the soil into cash.    And the argument is just as appropriate should the appellant discover minerals upon its lands, and mine and market the same.    The only safe and consistent rule to adopt is that fixed by the court below.

Order affirmed.

DICKINSON, J.    I dissent.