## STATE v. WELLS FARGO & COMPANY.[1]

October 1, 1920.

No. 21,919.

**Gross earnings tax on carriers — no abatement authorized.**

1. The Minnesota Tax Commission has no power to abate any part of the percentage of gross earnings tax fixed by statute.

**Same — Constitution not violated.**

2. The system of gross earnings taxation as applied to transportation companies violates no provision of the state or Federal Constitution.

**Same — form of taxation on express companies valid.**

3. The legislature has the power, since the constitutional amendment of 1906, as well as before, to impose this form of taxation upon express companies.

1 Reported in 179 N. W. 221.

**Commerce — property used, not the commerce, taxable — tax on express companies valid.**

4. A state may in good faith tax property engaged in interstate commerce. It may not tax the commerce itself. The statute of this state imposing a gross earnings tax of 8 per cent upon express companies is a good faith exercise of the taxing power.

**Taxation — classification of property — inequality of taxation.**

5. Matters of classification of property for taxation are matters of state policy. The state may resort to unequal taxation so long as the inequality is not based upon arbitrary distinctions.

**Same — gross earnings tax and ad valorem tax.**

6. A gross earnings tax is not required to be an exact equivalent of the ad valorem tax imposed on other property.

**Same — tangible and intangible property.**

7. The state may tax defendant's entire property, tangible and intangible, as used within its limits, at its real value as part of a going concern.

**Same — valuation of property may be computed by capitalizing net earnings.**

8. There is evidence that defendant's property had substantial intangible value. The market value of defendant's stock and bonds is not conclusive evidence of the value of its property used in the express business which is only part of its whole property. A recognized method of arriving at property value, including intangible value, is that of capitalizing net earnings. There is evidence that the value of defendant's property computed on this basis largely exceeded the value of its tangible assets, and the evidence sustains the finding of the court that the tax is a fair and reasonable exaction.

Action in the district court for Ramsey county under Laws 1913, chapter 454, to recover gross earnings taxes for the years 1914 to 1917, both inclusive. In its answer defendant among other matters alleged that these taxes constituted an unlawful interference and burden upon interstate commerce, and operated to deprive defendant of its property without due process of law, contrary to article 1, section 8, subdivision 3, of the Federal Constitution and of section 1 of the Fourteenth Amendment thereto. The case was tried before Olin B. Lewis, J., who made findings and ordered judgment against defendant in the sum of $47,355.98. Defendant's motion for amended findings was granted in part and denied

in part. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*H. S. Marx* and *Davis, Severance & Morgan,* for appellant.

In the case of all commuted or substituted systems of taxation, if the method employed is but a fair means of measuring a tax upon the value of the property employed in interstate commerce, it is valid; but if it results in producing a tax exceeding that which would be levied against the property on an ad valorem basis, it is invalid as a burden upon the commerce. The Minnesota gross earnings tax on the earnings of express companies is, or purports to be, a substituted form of taxation. U. S. Express Co. v. Minnesota, 223 U. S. 335, 32 Sup. Ct. 211, 56 L. ed. 459. Only as such can it be upheld. It represents a system, presumably more convenient to administer, of reaching the same result as an ad valorem property tax. Unless it does produce an equivalent result, it cannot be justified. The theory is that the earnings themselves are not taxes at all, but that they are merely taken into account as a convenient measure of the value of the property from the use of which they arise. On its face such a system is a tax upon earnings. It should therefore be held to be a burden upon interstate commerce in the absence of some showing that the receipts are used only as a fair and reasonable measure of the actual property value. The Supreme Court of the United States has taken a similar view of the burden of proof in a case in which it held that an alleged inspection fee was void as a burden upon interstate commerce. Foote & Co. v. Maryland, 232 U. S. 494, 34 Sup. Ct. 377, 58 L. ed. 698.

In the language used in Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, 15 Sup. Ct. 360, 39 L. ed. 311, and Galveston, H. & S. A. R. Co. v. Texas, 210 U. S. 217, 28 Sup. Ct. 638, 52 L. ed. 1031, the court clearly had in mind that the ordinary property tax which the substituted tax must not exceed, was an ordinary single ad valorem tax upon the property, and there could be no clearer expression of the proposition that the gross earnings tax or any substituted tax would be held invalid if it had no relation to the value of the property upon which it was imposed. The same principle was followed and the language of the Adams

case was quoted in Western Union Tel. Co. v. Kansas, 216 U. S. 1, 27, 30 Sup. Ct. 190, 54 L. ed. 355, where a tax of a given per cent of authorized capital, imposed by a statute of Kansas, was held unconstitutional as a burden upon interstate commerce, the court there refusing to be concluded as to the fact of such a burden being imposed by "the disavowal by the state of any purpose to burden interstate commerce." The case of U. S. Express Co. v. Minnesota, 223 U. S. 335, 32 Sup. Ct. 211, 56 L. ed. 459, involved the validity of taxes imposed under a statute similar to that under consideration, save that the tax rate was 6 per cent. The items of the earnings involved were of the same character as those in the present case. The court referred to Fargo v. Michigan, 121 U. S. 230, 7 Sup. Ct. 857, 30 L. ed. 888, and Philadelphia & S. M. S. S. Co. v. Pennsylvania, 122 U. S. 326, 7 Sup. Ct. 1118, 30 L. ed. 1200, the Galveston Case and others, saying (p. 346) : "The supreme court of Minnesota construed the tax to be a property tax, measured by the gross earnings within the state, which, under their construction of the tax, included the earnings here in question. That court held that the statute was part of a system long in force in Minnesota, passed under the authority of the state Constitution, and was intended to afford a means of valuing the property of express companies within the state. While the determination that the tax is a property tax measured by gross receipts is not binding upon this court, we are not prepared to say that this conclusion is not well founded, in view of the provisions and purposes of the law. * * * There is no suggestion in the present record, as was shown in Fargo v. Hart, 193 U. S. 490, that the amount of the tax is unduly great, having reference to the real value of the property of the company within the state and the assessment made. * * * Upon the whole we think the statute falls within that class where there has been an exercise of good faith of a legitimate taxing power, the measure of which taxation is in part the proceeds of interstate commerce which could not, in itself, be taxed, and does not fall within that class of statutes uniformly condemned in this court, which show a manifest attempt to burden the conduct of interstate commerce, such power, of course, being beyond the authority of the state."

In Fargo v. Hart, 193 U. S. 490, 24 Sup. Ct. 498, 48 L. ed. 761, re-

ferred to in the passage just quoted, the court placed a limitation upon the use of the so-called unit rule of valuation, so as to prevent the taking into account by the taxing authorities of property outside of the state which in no way contributed to the value of the property within the state. In that case express business was involved, and the taxing authorities were urging that bonds held in another state entered into the value of the property within the state. It was held that the tangible assets outside of the state, although they contributed to the value of the express company's capital stock, could not be admitted to contribute anything in the way of credit, good will or otherwise, to the value of the company's system as a whole, or proportionately to the value of that part of it within the state. We do not suppose that it will be seriously contended by the state in the case at bar that the assets of the appellant located outside of Minnesota, such as stocks, bonds and other investments, can in any way be considered as contributing to the value of the property within the state.

It is apparent that in the United States Express Company case, the Supreme Court considered the question whether the statute on its face was a tax upon earnings, a doubtful one, and that it was only because of the interpretation placed by this court upon the statute there involved, and because of the fact that there was no objection to the tax as unduly great, "having reference to the real value of the property," that the court, with obvious hesitancy, concluded that "upon the whole" the tax must be deemed one upon the property, and not one upon the earnings of the express company. There can be no other legitimate inference from the reference to Fargo v. Hart and the value of the property, than that if it had appeared from the record and had been urged that the tax was unduly great, it would have been held invalid as a burden upon commerce. That the court attributed the greatest importance to the absence of such a contention in the United States Express Company case is shown by its comment upon that decision shortly afterward in Johnson v. Wells Fargo & Co. 239 U. S. 234, 36 Sup. Ct. 62, 60 L. ed. 243, where a statute of South Dakota imposing a tax upon the gross earnings of an express company was held to be in violation of certain provisions of the state constitution, and where the court, referring to its decision in

the United States Express Company case said, on page 243: "There was no contention in the case that the method used resulted in an excessive valuation."

In Cudahy Packing Co. v. Minnesota, 246 U. S. 450, 38 Sup. Ct. 373, 62 L. ed. 827, another statute of Minnesota similar to that involved in the United States Express Company case was in question. The statute imposed a tax upon the Cudahy Packing Company as a freight line company measured by a stated percentage of its gross earnings from mileage within the state on both intrastate and interstate commerce. The company objected to the tax upon the ground that it was a direct burden upon interstate commerce, and that it was not the fair equivalent of a property tax. It showed that the cash value of each of its cars as a separate article of tangible property was from $700 to $900, and that a tax levied and assessed in the ordinary way upon such property at the prevailing tax rate in each year would have produced only some $1,722, whereas the tax produced by the gross earnings method was $2,111. The argument chiefly relied upon was that the case fell within the decisions in Fargo v. Michigan, 121 U. S. 230, 7 Sup. Ct. 857, 30 L. ed. 888; Philadelphia & S. M. S. S. Co. v. Pennsylvania, 122 U. S. 326, 7 Sup. Ct. 1118, 30 L. ed. 1200; and Galveston, H. & S. A. R. Co. v. Texas, 210 U. S. 217, 28 Sup. Ct. 638, 52 L. ed. 1031, as a direct tax on the gross earnings of the company, and, as such, a burden upon interstate commerce, but it was also urged that the tax was invalid because it exceeded the fair equivalent of an ad valorem tax. The discrepancy between the amount of the ordinary property tax upon the tangible value of the cars and the actual amount claimed by the state under the gross earnings law was so comparatively small, being less than $400 for the six years in question, that the second argument urged by the defendant was without convincing force. The court held that in addition to the cash value of each car as a separate article of tangible property, the record showed that the intangible property incident to their combined use under the contractual arrangement with the railroads was of substantial value, and said on page 456: "The record makes it reasonably certain that the property, valued with reference to its use and what it earns, is worth considerably more than the cash value of the cars taken separately

146 M.—29.

—enough more to indicate that the tax is not in excess of what would be legitimate as an ordinary tax on the property, taken at its real or full value."

The court took the occasion briefly to re-affirm the principles upon which its decisions had rested, citing some of the more important cases, and then proceeding on page 453: "On the other hand, if what is done is to reach the property and not to tax the gross earnings, the latter being taken merely as an index or measure of the value of the former, it well may be that the objection urged against the tax is untenable; for, as this court has said: 'By whatever name the tax or taxes may be called that are fixed by reference to the value of the property, if they are not imposed because of its use in interstate or foreign commerce, and *if they amount to no more than would be legitimate as an ordinary tax upon the property,* valued with reference to the use in which it is employed, they are not open to attack as restraining or burdening such commerce. St. Louis Southwestern Ry. Co. v. Arkansas, 235 U. S. 350, 367; [35 Sup. Ct. 99, L. ed. 265]; Postal Telegraph Co. v. Adams, 155 U. S. 688; [15 Sup. Ct. 360, 39 L. ed. 311]; Wisconsin & Michigan Ry. Co. v. Powers, 191 U. S. 379, 387; Fargo v. Hart, 193 U. S. 490, 499; Galveston, Harrisburg & San Antonio Ry. v. Texas, supra."

Referring to the United States Express case, the court said on page 455 of its opinion: "The statute declared that the tax was to be in lieu of other taxes on the company's property, and the state court held that it was not in reality a tax on the gross earnings, but was a tax on the property, the earnings being taken merely as a measure of the value of the property for taxing purposes. We accepted and gave effect to that holding, not as being conclusive on us, but on the grounds that the property from which the earnings were derived was not to be otherwise taxed, that the tax was part of a system intended to reach the full value of the company's property in the state as reflected by the gross earnings, and that the amount of the tax did not appear to be in excess of what would be legitimate as an ordinary tax on the property, valued with reference to its use as part of a going concern."

The court therefore held that the tax in question in the Cudahy case was not distinguishable from that sustained in the United States Express

Company case, and therefore held it also to be valid. It is quite obvious from all the quotations from the court's opinion that if it had appeared that the tax in question exceeded what would have been legitimate as an ordinary tax on the property taken at its real or full value, it would have been declared invalid. See also Northwestern Mut. Life Ins. Co. v. Wisconsin, 247 U. S. 132, 38 Sup. Ct. 444, 62 L. ed. 1025; Union Tank Line Co. v. Wright, 249 U. S. 275, 39 Sup. Ct. 276, 63 L. ed. 602.

*Clifford L. Hilton,* Attorney General, and *Patrick J. Ryan,* for the state.

In U. S. Express Co. v. Minnesota, 223 U. S. 335, 32 Sup. Ct. 211, 56 L. ed. 459, the Supreme Court of the United States affirming 114 Minn. 346, 131 N. W. 489, held that the gross earnings law of Minnesota, which provided for the taxation of the property of express companies, was not in violation of the interstate commerce clause of the Federal Constitution. Cudahy Packing Co. v. Minnesota, 246 U. S. 450, 38 Sup. Ct. 373, 62 L. ed. 827, affirming 129 Minn. 30, 151 N. W. 410.

The law involved in this case is the exact duplicate of the law considered by the United States Supreme Court in the case of United States Express Company v. Minnesota, supra, the only difference being that the rate of assessment has been increased from 6 to 8 per cent. So paraphrasing the court's statement in the Cudahy Packing Company case "Unless this tax be otherwise distinguishable, it must, under the decision in that case, be regarded as a property tax and not as laid on the gross earnings."

The Supreme Court has declared in these two cases that if a tax "is not in excess of what would be legitimate as an ordinary tax on the property taken at its real or full value," it will not be held to violate the commerce clause of the United States Constitution.

Appellant does not show that it was excessively assessed by mere proof that according to one or more methods of determining values its taxes were too high. A tax assessed upon an ad valorem basis by a board or an assessor will not be set aside unless the valuation cannot be sustained upon any reasonable or fair basis. Western Union Tel. Co. v. Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. ed. 790; Louisville & Nashville R. Co. v. Greene, 244 U. S. 660, 37 Sup. Ct. 683, 61 L. ed.

1291; Illinois Cent. Ry. Co. v. Greene, 244 U. S. 555, 37 Sup. Ct. 697, 61 L. ed. 1309; Western Union Tel. Co. v. Taggart, 163 U. S. 1, 16 Sup Ct. 1054, 41 L. ed. 49.

Certainly if an ad valorem tax will not be set aside upon mere proof that it is excessive, a commuted tax will not be set aside upon the showing that it is excessive in comparison with an ad valorem tax calculated by one of many different acceptable methods. The contrary is true that the tax will be upheld if it can be accounted for upon any basis of valuation, not fundamentally wrong or fraudulent, which the legislature might have adopted.

The question really is whether the evidence in the record compels acceptance of defendant's assertion that its tangible property in Minnesota had no value by reason of its relation to the whole property of the Wells-Fargo system over and above its actual cost as shown in its inventories.

HALLAM, J.

This action is brought to recover the unpaid gross earnings tax for the years 1914, 1915, 1916 and 1917, assessed against the defendant, under chapter 454, p. 664, Laws of 1913, G. S. 1913, § 2241, et seq. The tax imposed by this act is a tax "equal to 8 per cent of its gross earnings," after deducting payments to railroads for the transportation of goods. Fifty-five per cent of defendant's revenue was in fact paid for this purpose. This tax is "in full and in lieu of all taxes and assessments upon its property."

The state demands 8 per cent of the gross earnings from express business done within this state, including a proper proportion of earnings from interstate business No question is raised as to the propriety of the proportion.

1. At the outset we may say that the Minnesota Tax Commission has no power to abate any part of the percentage of gross earnings tax fixed by the statute. The commission has power to receive complaints and to examine cases where property has been improperly or unequally assessed. G. S. 1913, § 2344, and "to grant such reduction or abatement of assessed valuations or taxes and of any costs, penalties or interests thereon as it may deem just and equitable," and, "in the case of gross earnings taxes, the application in the premises may be made directly to the tax

commission." G. S. 1913, § 1978. This gives the tax commission jurisdiction to make reductions or abatements in the matter of gross earnings taxes as in case of other taxes. The commission may doubtless reduce the amount charged to earnings just as it may reduce the amount or valuation of property charged with ad valorem taxation, but it may not reduce the rate of taxation which the legislature has fixed by law. It could not abate the percentage at which particular property may be subject to ad valorem taxation as provided in G. S. 1913, § 1988. No more can it reduce the percentage of gross earnings to be exacted. Either the statute must stand as it reads or it is altogether void.

2. Defendant contends that a tax imposed by statute measured solely by gross earnings, has no reference to the value of the property, cannot therefore be a property tax, and is invalid, or, in other words, that our whole system of gross earnings taxation is void.

It is not clear to us just what constitutional provision defendant contends inhibits this form of taxation as applied to transportation companies. We know of none. The validity of this form of taxation, as applied to property employed in transportation, seems to us no longer an open question. When railroads first came to Minnesota Territory, this form of taxation was agreed upon by the state and the railroad companies as the most practicable and equitable system of taxation of railroad property. After Minnesota became a state this form of taxation was imposed upon railroad companies which had not by contract agreed to accept it, until 1871 with doubtful constitutional authority, State v. Luther, 56 Minn. 156, 57 N. W. 464, but so satisfactory was the system that its constitutionality was never challenged by the railroad companies interested. The amendment of 1871, art. 4, § 32a, provided for this form of taxation of railroad property and the Constitution has ever since so provided. The validity of this provision has been sustained. State v. Great Northern Ry. Co. 106 Minn. 303, 119 N. W. 202. Property of railroad companies, freight line companies, sleeping car companies, telephone companies and trust companies are now taxed in this manner. The United States Supreme Court has applied legislation providing for this system of taxes in many cases. Many years ago this mode of taxation of interstate railroads was sustained and held not a tax upon interstate

commerce. State Tax on Railway Gross Receipts, 15 Wall. 284, 21 L. ed. 164. We sustain this method of taxation of express companies.

3. Defendant contends that our state Constitution does not authorize the taxation of express companies in this manner. Prior to 1906 the Constitution provided for this form of taxation of express companies. Section 17, art. 9. The amendment of 1906 repealed section 17, and, it is contended, took away with it the power to impose this form of taxation. The answer to this contention is that the taxing power is not conferred by the Constitution, but is only limited by it. The power to tax property in this manner is, in our opinion, inherent in the state, unless some constitutional provision deprives the state of the power. Before the adoption of the amendment of 1906, the provision of section 1, art. 9, that all taxes "shall be as nearly equal as may be" restricted the taxing power of the legislature, and it was deemed necessary to adopt section 17 in order to preserve the right of imposing this form of taxation. But the amendment of 1906, providing that "taxes shall be uniform upon the same class of subjects," is, in our opinion, broad enough to permit the taxation of express companies in a class by themselves, and by this form of taxation. Section 17 was omitted from the amendment of 1906 because no longer necessary.

The amendment of 1906 contained a provision that "nothing herein contained shall be construed to affect, modify or repeal any existing law providing for the taxation of the gross earnings of railroads." Defendant contends that, by the application of the rule "expressio unius est exclusio alterius," this provision is indicative of a purpose to abolish this form of taxation as applied to other property than that of railroad companies. We see no force in this contention. The express reservation of existing laws for taxation of railroads was not necessary to preserve the right to tax railroads on the gross earnings plan, but was doubtless inserted to preserve the features of the provision for taxation of railroads which requires submission to the people of any proposed change in the laws enacted for that purpose.

4. Defendant contends that the gross earnings tax imposed on defendant largely exceeded the equivalent of an ad valorem property tax and that it is therefore a burden upon interstate commerce.

A state may tax property engaged in interstate commerce. It may not tax interstate commerce itself. Property engaged in interstate commerce is subject to the same measure of state authority as any other property, so long as it is taxed in the good faith exercise of the taxing power. It is not an easy matter to draw the line between taxes that burden interstate commerce and those which simply impose a valid property tax. We will not undertake to do so. But it seems to us that the statute involved in this case falls within the class where there has been an exercise in good faith of the taxing power.

5. The Federal Constitution imposes no iron clad rule upon the states in respect to their internal taxation. The state has large power in the matter of classification of property for purposes of taxation. As said in one case: "These matters of classification are of state policy, to be determined by the state, and the Federal Government is not charged with the duty of supervising its action." Florida Cent. & P. R. Co. v. Reynolds, 183 U. S. 471, 22 Sup. Ct. 176, 46 L. ed. 283. A state may exempt property from taxation, such as property used for religious, educational or benevolent purposes. It may make exemption in order to encourage industries. It may exempt real estate and tax personalty or tax real estate and exempt personalty. It may impose double taxation or any other form of unequal taxation, so long as the inequality is not based upon arbitrary distinctions. "Doubtless it (the Federal Constitution) would prohibit a state from selecting some obnoxious person and casting upon his property the sole burden of taxation, or a burden differing from that cast upon others whose property was similarly situated, but it does not prevent a state from exercising its judgment as to the property to be taxed and the mode of taxation, provided that property similarly situated is treated in the same way." Florida Cent. & P. R. Co. v. Reynolds, 183 U. S. 471, 22 Sup. Ct. 176, 46 L. ed. 283; Ohio R. & W. Ry. Co. v. Dittey, 232 U. S. 576, 592, 34 Sup. Ct. 372, 58 L. ed. 737; St. Louis S. W. Ry. Co. v. Arkansas, 235 U. S. 350, 35 Sup. Ct. 99, 59 L. ed. 265. We have no thought that the Federal Constitution invalidates the provisions of our statute by which iron ore is taxed 50 per cent of its value, household goods 25 per cent, property up to the value of $200 not at all, real estate mortgages not at all, or the provision by which cred-

its are taxed at a flat rate of three mills, while other property is taxed, in some districts, at a rate twenty times as great.

6. A gross earnings tax is not required to be an exact equivalent of the ad valorem tax imposed on other property. If there must be a valuation of the property taxed and an exact comparison of results, then the whole purpose of the gross earnings tax is defeated, for it is usually resorted to because, as to the property involved, it is not practicable to make such a valuation or to impose an ad valorem tax.

And with what class of property taxed on an ad valorem basis must we compare it? With iron ore taxed at 50 per cent of its value, household goods at 25 per cent or agricultural products at 33⅓ per cent? The Federal Constitution does not require that all property be taxed at like rate. In Coulter v. Louisville & N. R. Co. 196 U. S. 599, 25 Sup. Ct. 342, 49 L. ed. 615, it was held that the state of Kentucky might tax the franchise of a Kentucky corporation at a different rate from tangible property so far as the Constitution of the United States is concerned.

Our statute imposes a 3 per cent gross earnings tax on telephone corporations, 5 per cent on railroad corporations, 5 per cent on trust companies, 6 per cent on freight line companies, 5 per cent on sleeping car companies. These differences are within the scope of the power of the legislature to classify property for purposes of taxation. The classifications are legitimate ones. For example, there are reasons why the rate in case of express companies should be higher than in case of railroad companies. The cost of transportation is deducted in the case of express companies before the percentage is computed, but it is not, in the case of railroads.

7. Defendant contends that the result of the operation of the statute is to tax the property of defendant at a rate arbitrarily high. Defendant offered evidence of the value of its tangible property. The tax imposed is a high percentage of such value. But this is not decisive. In Cudahy Packing Co. v. Minnesota, 246 U. S. 450, 38 Sup. Ct. 373, 62 L. ed. 827, the contention was made that the usual tax rate, if applied to the cash value of the cars of the Cudahy Packing Company, would result in an appreciably lower rate, and that therefore the tax imposed was in excess of what would be legitimate as an ordinary tax on property. "But the

contention," the court said, "proceeds on an erroneous assumption. The state is not confined to taxing the cars or to taxing them as separate articles. It may tax the entire property, tangible and intangible, constituting the car line as used within its limits, and may tax the same at its real value as part of a going concern." This is precisely the situation here.

8. Defendant contends that its property had no intangible value. It contends that the proper method of reaching intangible value of a corporation's property is by using the market price of its stock, and that the evidence shows that the market value of defendant's stock is less than the asset value thereof.

It is true the market value of the company's stock and bonded debt furnishes good evidence of the real value of the aggregate of its assets. This has been recognized in many cases. Adams Express Co. v. Ohio, 166 U. S. 185, 222, 17 Sup. Ct. 604, 41 L. ed. 965; State Railroad Tax Cases, 92 U. S. 575, 605, 23 L. ed. 663. But such evidence is not conclusive. It is a matter of common knowledge that market quotations of stock sometimes vary widely without material changes as to the productive capacity of the property. In this case it is impossible to use this standard with anything like conclusive effect, for the reason that, only about one-fifth of defendant's property is used in its express business. The balance consists of property held by the "investment department" of the company. Since the whole property of the company goes towards making up the value of the stock, it is apparent that the stock value gives no decisive information as to the market value of the assets, tangible or intangible, used in the express business.

Another method of determining aggregate property value, including intangible value, is that of capitalizing the net earnings of the corporation. In Louisvlle & N. R. Co. v. Greene, 244 U. S. 522, 37 Sup. Ct. 683, 61 L. ed. 1291, Ann. Cas. 1917E, 97, the court speaks of this as one of the "recognized methods" of ascertaining the aggregate capital value of the company's stock, which means the total value of all its assets, tangible and intangible. See also Board of Assessment v. Alabama Central R. Co. 59 Ala. 551; State v. Virginia & T. R. Co. 23 Nev. 283, 46 Pac. 723, 35 L.R.A. 759, 24 Nev. 53, 49 Pac. 945, 50 Pac. 607.

Defendant has furnished the court with no evidence for the ascertainment of value based on capitalization of net earnings. The state has furnished some figures, from a process of deduction, not complete, and not altogether certain, from which the court might well find that the earning capacity of defendant largely exceeded the earning capacity of its tangible assets, and that the value of the intangible assets largely exceeded the value of its tangible assets, and tending to show that the rate of taxation upon the property of defendant "is not in excess of what would be legitimate as an ordinary tax on the property taken at its real or full value" (quotation from Cudahy Packing Co. v. Minnesota, 246 U. S. 450, 38 Sup. Ct. 373, 62 L. ed. 827). The trial court found the tax imposed to be a fair equivalent of any tax which the state might lawfully assess and collect from defendant upon its property subject to taxation in this state and a reasonable exaction. We think the finding is sustained by the evidence.

The statute imposing a tax of 8 per cent upon the gross earnings of express companies is valid.

Judgment affirmed.