STATE EX REL. CITY OF MINNEAPOLIS v. MINNEAPOLIS
STREET RAILWAY COMPANY AND OTHERS.
HORACE LOWRY AND OTHERS, APPELLANTS.[1]

February 2, 1923.

No. 23,190.

**Peremptory writ for inspection of company's books by representatives of
city.**

1. After the entry of judgment for the issuance of a peremptory
writ of mandamus requiring a street railway company to permit the
representatives of a city to inspect the books and papers of the com-
pany to prepare for a hearing, pursuant to chapter 278, Laws 1921, of
the company's application for the valuation of its property and the
establishment of rates of fare by the Railroad and Warehouse Com-
mission, compliance with the command of the writ cannot be avoided
on any of the following grounds: (1) That application for the in-
spection should have been made to the commission instead of to the
court; (2) that such an application had been made to and denied by
the commission; (3) that the proposed inspection was not relevant
to the inquiry before the commission; (4) that the city had an ade-
quate remedy in the ordinary course of law, or (5) that the judgment
and writ went beyond the findings.

**Stipulation that certain expenditures are not to be investigated, binding.**

2. Where the street railway company's balance sheets and income
account showing its net earnings are made part of the application to
the commission, all the items entering into the accounts may be con-
sidered, and the nature of all expenditures which go to reduce the net
earnings are subject to investigation. But, when the company stip-
ulates that certain expenditures are not to be considered as affecting
the value of its property or as having any bearing on the rates of fare
it may charge, an investigation of such expenditures is no longer
material and may not be required.

**Stock books of holding company to be inspected.**

3. The court properly directed a corporation holding the stock
of the street railway company and the officers and directors of the
holding company to permit the city to inspect the stock books of

[1] Reported in 191 N. W. 1004.

the holding company. The commission and the city should have considerable latitude in the pursuit of information, and all facts tending to throw light on the ultimate questions to be determined by the commission are relevant.

### Officers and directors of holding company to comply with the writ.

4. Proceedings to compel the officers and directors of the holding company to comply with the commands of the writ or show cause why they should not be punished for contempt are not of a criminal but of a civil nature. The affidavit on which the order to show cause was based was sufficiently definite and certain. There was sufficient proof that the individuals named in the order were officers and directors of the company.

### Service by mail of order on nonresidents to show cause insufficient.

5. In such proceedings, service by mail of the notice and order to show cause upon non-resident officers and directors is not sufficient.

### Presumption as to stock books.

6. It will be presumed that the stock books of a corporation are within the control of its officers and directors.

### Inspection of stock books.

7. It was unnecessary to prove that an inspection of the stock books had not been permitted in view of the admissions in the pleadings.

### Inspection of books not denial of right against unreasonable searches.

8. The right to be secure against unreasonable searches and seizures was not denied when inspection of such books was authorized and required.

Upon the relation of the city of Minneapolis the district court for Hennepin county granted its alternative writ of mandamus, directed to Minneapolis Street Railway Company, Twin City Rapid Transit Company and the St. Paul City Railway Company, requiring them to permit relator, its utility expert and members of his staff, to examine all books, records and accounts of certain designated corporations. The proceedings before and after the application for the writ are narrated at the beginning of the opinion. Relator's motion to allow its city attorney and utility expert an in-

spection and copy, or permission to take a copy within ten days, of the books of account and minute books of the Twin City Rapid Transit Company since June 4, 1891, and of the Minneapolis Street Railway Company since July 1, 1873, was granted by Dickinson, J., as to the former company. The matter of the writ was tried before Leary, J., who made findings and granted a peremptory writ against the Minneapolis Street Railway Company and affiliated corporations. Thereafter the city demanded certain documents and specified information, and upon failure to obtain them obtained an order requiring the corporations named to show cause why relator's motion for a peremptory order should not be granted or respondents punished as for contempt. The motion was heard and granted by Nye, J. From the order granting the motion, defendants appealed. Modified and affirmed.

*W. D. Dwyer, Lancaster, Simpson, Junell & Dorsey* and *Butler, Mitchell & Doherty,* for appellants.

*Neil M. Cronin, William H. Morse* and *R. S. Wiggin,* for respondent.

LEES, C.

The parties to this appeal will be thus designated in this opinion: The relator as the "city"; the Minneapolis Street Railway Company as the "street railway company"; the Twin City Rapid Transit Company as the "transit company"; and the other appellants as "individual appellants." The Minnesota Railroad and Warehouse Commission will be designated as the "commission."

On June 21, 1921, pursuant to chapter 278, p. 328, Laws 1921, the street railway company applied to the commission to have its property valued and its rates of fare fixed so as to yield a reasonable return on the fair value of the property. While the application was pending, the city filed a petition in the district court of Hennepin county, praying for an alternative writ of mandamus commanding the street railway company, the transit company, and the St. Paul City Railway Company to permit the city to examine and inspect all the books, records, accounts, documents and other data of these companies and of other transportation companies affiliated with them, to enable it to prepare for the hearing before the com-

mission. The petition alleged that the representatives of the city had been given access to some of the companies' records, but not to all of them. The alternative writ was issued and in response thereto the three companies made separate answers and returns. The transit company answered that it was not a party to the proceeding before the commission, and, therefore, its books were not subject to inspection; that they were private property kept solely for its own use, and that an inspection thereof would amount to an unreasonable search and seizure. It appeared that the transit company owns all the stock of the other companies except a few shares necessary to qualify directors. One of the purposes for which it was incorporated was to hold, maintain and operate street railways, but it is alleged in its answer that it never exercised this power but confined its activities to owning and holding stock in the other companies. It also appeared that, after issue was joined, the transit company opened its books for the city's inspection. The city's representatives were engaged in such inspection when the mandamus proceeding came on for hearing.

At the hearing, the defendants withdrew their refusal to allow the city to inspect any or all of the books, records and accounts of the several companies named in the alternative writ and stipulated that a peremptory writ might be issued, granting the relief demanded in the petition. Findings of fact were made, with an order for judgment, and judgment was entered and the peremptory writ issued. It commanded the defendants to permit the representatives of the city to inspect "all the minute books, books, records, accounts, documents and other data of each and all of said companies and corporations now in existence from the date of their respective organizations to the present time," and was served on the defendants and their officers and directors within the state.

Thereafter demand was made for letters from the transit company or its officers to the American Exchange National Bank of New York and to the Commercial Trust Company of New Jersey, instructing the bank and trust company to give the attorney for the city and its utility expert access to their records pertaining to any account of the transit company with the bank or trust company

at any time subsequent to January 1, 1919, whether such account was in the name of the transit company or in the names of certain individuals. Demand was also made for an inspection of all vouchers, memoranda and other records pertaining to the deposit and expenditure of moneys represented by such accounts or to moneys paid by the transit company to its officers or agents in addition to their regular salaries, and for an inspection of the stock books of the company and its list of stockholders subsequent to February 28, 1917. In response to these demands the defendants replied that the records of the bank and trust company were not under their control and were not within the command of the peremptory writ; that the representatives of the city had been permitted and still were permitted to examine all vouchers, canceled checks, memoranda and other records in the possession or under the control of the transit company or its officers; that the writ did not command them to permit an inspection of the stock books of the transit company and that the same were not material to the pending application before the commission.

The city then obtained an order requiring the transit company and its officers and directors to comply with the demand or show cause why they had not done so. The order was based on the records and files and on the affidavit of the city attorney. In response thereto defendants interposed objections, accompanied by a motion for the discharge of the order. The court denied the motion and made an order requiring the company and the individuals whose names now appear in the title at the head of the opinion to comply with the demand and appear at a later date to show how the order had been obeyed. The consequence of a failure to obey the order was commitment to jail until it was obeyed. This is an appeal from the order.

1. It is objected that mandamus was not a proper remedy because the commission is granted initial and exclusive power to fix rates of fare, section 5, chapter 278, with authority to require the production of defendants' books and papers, section 4184, G. S. 1913. It must be conceded that the commission may go to the courts for aid if it calls for a book or paper containing evidence

material to the issue and it is not produced. By virtue of section 9, of chapter 278, the city council had the right to inspect the books and accounts of the street railway company to prepare for the presentation to the commission of all the facts material to the issue before it. Granting, for the purpose of the argument, that the city should have applied to the commission and not to the court for an order for such inspection, the time to make the point was when the application for the peremptory writ was heard. The proceedings are no longer at a stage where this objection, or the objection that in fact an application for an inspection was made to the commission and denied, is of any avail. For the same reason we are not now concerned with the propriety, necessity or relevancy of the inspection granted by the court, or with consideration of the point that the city may have had a plain and adequate remedy in the ordinary course of law, and therefore was not entitled to a writ of mandamus. If it be true that the judgment and writ go beyond the findings, the point cannot now be made for the first time. The remedy is by application to the lower court to amend or correct the judgment and writ. 2 Dunnell, Minn. Dig. §§ 5050 and 5100.

Although the command of the writ is broad and sweeping, the language in which it is couched must be read in connection with the provisions of chapter 278. Section 8 confers on city officials the right at all times to inspect all the books, records, accounts and street railway property of any street railway in the city. The right is limited, by the terms of section 9, to the ascertainment of facts material to the issues. Cities are not invested with inquisitorial powers. No one would claim that the right to examine a party's books and papers gives an unbridled license to examine them to satisfy the curiosity of the opposite party, or that the courts should issue a roving commission to ransack books and papers to see what can be found that may be of advantage to a party to any action or proceeding. Only insofar as books and papers contain information relevant and material to an inquiry pending before the commission are they open to inspection. The difficult questions are when, how and by whom the relevancy or materiality of an entry in a book, or the contents of a document, is to be determined. In considering

these questions we shall not go beyond their application to the facts in the instant case.

The transit company's total deposits in the American Exchange National Bank were $227,000. The money deposited had been expended. The city seeks to ascertain how it was expended. The relations between the transit company and the street railway company warrant the inference that a portion of the money came from earnings of the last named company, and hence it was pertinent to inquire how the money had been spent. It was important to know the amount of the net earnings of the street railway company. If they had been reduced by expenditures for purposes which had no legitimate relation to the maintenance, equipment, operation or extension of the company's lines, or the improvement of its property, it was proper to make proof thereof at the hearing before the commission. A balance sheet and income account, showing such net earnings, were made part of the application to the commission. In valuing the company's property and establishing rates of fare, everything shown by the accounts might be considered, and hence it was proper to delve into them, for every item of the expenditures of a business must be assigned to a place in the accounts and is reflected in the annual balance sheets. A street railway company under the jurisdiction of the commission must disclose the purpose of all expenditures which go to reduce its net earnings. To paraphrase the language of Mr. Justice McKenna, in Smith v. Interstate Commerce Com. 245 U. S. 33, 38 Sup. Ct. 30, 62 L. ed. 135, in conducting an investigation, the commission and city council may penetrate all disguises. There can be nothing private or confidential in the activities and expenditures of a public service company asking the commission to value its property and establish the rates it may charge for its services. In conferring power to investigate, the legislature used language broad enough to authorize the investigation the city here sought to make.

But it appears that at the hearing of the order to show cause and in response thereto, a written statement was presented to the court containing the following stipulation:

This defendant and each and all of the other corporations named in and commanded by said writ hereby state, represent and stipulate that the deposits, disbursements and expenditures by the Twin City Rapid Transit Company, which are referred to in paragraphs 5, 6, 7, 8 and 9 of the affidavit of said Neil M. Cronin herein, do not affect the value of the property of the Minneapolis Street Railway Company, or any part thereof, and do not have any bearing upon said application of the Minneapolis Street Railway Company, or upon any rates of fare at any time to be granted to or charged by that company, and that it may be so determined and held in all proceedings, whether before the said Minnesota Railroad & Warehouse Commission or upon appeal to the District Court from the rulings of said Commission or otherwise; and they state, represent and stipulate that the said Minneapolis Street Railway Company in the proceedings before the said Railroad & Warehouse Commission is not entitled to have such deposits, disbursements, or expenditures, or any part or portion thereof, considered as a part of the costs, overheads or expenditures of said company in arriving at or establishing any rate of fare to be charged by said company; that said Minneapolis Street Railway Company has not claimed and will not claim that upon any hearing before the Railroad & Warehouse Commission, or upon any appeal taken in any such proceedings, any such deposits, disbursements or expenditures be taken into account as operating costs, overheads, or expenditures made by or on behalf of said Minneapolis Street Railway Company, and this defendant and the said Minneapolis Street Railway Company state, represent and stipulate that said moneys and all thereof had been received by the Twin City Rapid Transit Company as a stockholder and had become and were the moneys and property of that company prior to said deposits, disbursements or expenditures referred to in said affidavit of said Cronin, and that such deposits, disbursements and expenditures, or any part thereof, do not and cannot increase or diminish or in any manner affect the rates of fare to be charged by the Minneapolis Street Railway Company or the earnings or operating expenses of that company, or the value of its property or any part of the same, and do not and cannot increase, diminish or in

any manner affect any matter or thing involved in said application, or in any application that may be made to said Railroad & Warehouse Commission or in which the said plaintiff now has or at any time hereafter may have any interest or concern. The statements, representations and stipulations in this subdivision set forth are made to finally and conclusively show and establish that the said deposits, disbursements and expenditures are not in any way material to or related to the value of the property of the Minneapolis Street Railway Company in the establishing of any reasonable rate of fare to be charged by said company, and to show and establish that the same are not in any way material to or related to any matter or thing stated in or contemplated by chapter 278 of the Laws of 1921.

The paragraphs of the affidavit to which reference was made cover everything the city wished to investigate except the transit company's stock books. With this stipulation in the record, the city has accomplished its principal purpose. The expenditures it desired to investigate drop out of the case. For all practical purposes the moneys expended are to be treated as still in the treasury of the transit company and a charge against it in the rate proceedings, and hence the order under review must be modified.

2. The stock books of the transit company are clearly within the terms of the writ. They are within the control of the company. It objects to an inspection of them on the ground that the ownership and distribution of the stock has no relevancy to the inquiry pending before the commission and can be of no aid to the city in preparing its case, or to the commission in deciding it. Counsel for the city point to the command of the writ as a conclusive answer to the objection, but we think it must be read in the light of chapter 278.

The transit company's stockholders virtually own the property of the street railway company. If the usual practice was followed, those who owned stock in the latter company exchanged their shares for shares in the former company on some satisfactory basis. Presumably an inspection of the stock books will disclose not only the names and addresses of the stockholders, but also the dates

when they acquired their stock and the number of shares held by each of them. In its application to the commission, the street railway company states that its outstanding capital stock amounts to $5,000,000. This stock, together with that of the St. Paul City Railway Company and the suburban companies, is the property which the transit company owns and it is represented by the stock it has issued. It is fair to infer that the value of the physical property of the street railway company is one of the main sources of the value of the transit company's stock.

The accepted doctrine is that the basis of all rates is the fair value of the property used for the convenience of the public. To borrow from and adapt to the instant case expressions found in the opinion of the Supreme Court of the United States in the North Carolina Railroad Tax cases decided January 2, 1923 [262 U. S. ——, —— L. ed. ——, 43 Sup. Ct. 196] it may be said that the difficulties inherent in valuing the property of a street railway company are great. The valuers should have access to every fact which might aid them in performing their duty. The data are commonly in the possession of the company and are not readily accessible to others, and the legislature may properly authorize the commission to require the company to furnish information upon which the commission may exercise an informed and honest judgment in fixing values. The Federal Supreme Court has adopted the following rule by which such value is to be determined:

In order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. Smyth v. Ames, 169 U. S. 466, 546, 18 Sup. Ct. 434, 42 L. ed. 819. Minnesota Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18.

The same court holds that the price at which its capital stock is bought and sold in the market is a criterion of the value of the property of a corporation for the purpose of taxation, Adams Express Co. v. Ohio State Auditor, 166 U. S. 185, 222, 17 Sup. Ct. 604, 41 L. ed. 965, and such is the view of this court, as indicated in State v. Wells, Fargo Co. 146 Minn. 444, 179 N. W. 221. Will it aid the commission to ascertain the value of the stock in question if it knows the names of the stockholders and the amount of their several holdings? We think such information may be useful in several ways.

It will enable the city and the commission to elicit from the individual stockholders facts relative to the stock issues of the street railway company, for it is reasonable to suppose that many of the transit company's stockholders originally held stock of the street railway company. It will be advantageous to know how much stock the latter company issued from time to time; whether it was full-paid or bonus stock, and how payment was made, if made at all. These are matters peculiarly within the knowledge of those who once owned stock of the street railway company and now own stock of the transit company. If it be true that the street railway company's issue of stock represents an actual investment of $5,000,-000, the commission might properly consider that fact as one having a material bearing on the question it must determine. Of course the ultimate question is: What is the fair value of the property of the street railway company as an operating system? But, in rate-making proceedings, the modern tendency is to receive evidence of every pertinent fact or circumstance which might influence or aid an administrative board in arriving at a valuation of the property of a public service company. In pursuit of information which will serve legitimate ends, the commission and the city should have considerable latitude. There should be no wanton meddling, no quest for information to satisfy a prying curiosity, but all facts which tend to throw light on the ultimate question are relevant to the inquiry and should be disclosed. The facts relative to the ownership of stock are not wholly immaterial or irrelevant, and so much of the order as relates to the stock books is sustained.

3. The individual appellants insist that the order cannot be sustained as to them because there was no proof that they are officers or directors of the transit company; that this is a criminal proceeding in which they are charged with constructive contempt of court and that the accusation against them is not sufficiently definite and certain. We do not sustain any of these contentions. The order from which they appeal contains a finding that they are officers and directors of the transit company. It is based on all the records and files and on the affidavit of the city attorney. The facts disclosed by these documents sufficiently support the finding.

This is not a criminal proceeding. It is prosecuted, not to maintain and vindicate the authority of the court, but to make effective a remedy given to a private party. Only a civil contempt is involved. As to this, the case is ruled by Campbell v. Motion Picture Machine Operators, 151 Minn. 238, 186 N. W. 787, and the cases cited in the opinion.

As the basis of a proceeding for a civil contempt, the city attorney's affidavit was sufficiently definite and certain. State v. District Court of McLeod County, 113 Minn. 304, 129 N. W. 583.

Some of the individual appellants are nonresidents of this state. The notice and order to show cause was served on them by mail. This was not a good service. The statute directs that service be made in the same manner as a summons in an action. Section 8357, G. S. 1913. The order should be vacated as to individual appellants not personally served with the notice and order to show cause.

4. It is not to be supposed that the stock books are beyond the control of the officers and directors. The supposition is to the contrary, but, this aside, inability to comply with the order is a defense, and the burden of establishing it was on the individual appellants. State v. Searles, 141 Minn. 267, 170 N. W. 198.

5. It was unnecessary to prove that appellants have refused to permit an inspection of the stock books. The answer of the transit company tacitly admits that an inspection subsequent to February 28, 1917, was refused on advice of counsel, and then goes on at some length to set forth reasons why such an inspection was not proper.

6. An inspection of its stock books will not subject the transit company to an unreasonable search or seizure in violation of rights guaranteed by the state and Federal Constitutions. It is too plain for argument that there is no invasion of the right to be secure in the possession of private papers and effects, when a public service corporation is required to submit its stock books to the inspection of the representatives of the public, charged with the duty of ascertaining the value of the property of the corporation. State v. U. S. Exp. Co. 81 Minn. 87, 83 N. W. 465, 50 L. R. A. 667, 83 Am. St. 366; Federal Min. & Smelting Co. v. Pub. Utilities Com. 26 Idaho, 391, L. R. A. 1917F, 1195. In a sense, the books and papers of such a corporation cease to be private property after it voluntarily becomes subject to chapter 278 and applies to the commission for a valuation of its property. It must be held that by its own acts it has consented to an inspection, by the accredited representatives of the commission and of the city, for any and all proper purposes.

Other matters discussed in the briefs and in oral argument require no special mention. None have escaped our attention, but we have endeavored to cover no more ground than necessary to reach conclusions on those features of the case which control the determination thereof.

The order appealed from is modified by striking from its mandatory directions paragraphs 1 and 2 and subdivisions a, b, c and d of paragraph 3, and by vacating the order insofar as it is directed to officers or directors of the transit company who were not personally served with the notice or order to show cause. In all other respects the order is affirmed. Upon the going down of the remittitur, the district court will proceed in conformity herewith.